[Crim. No. 22653. First Dist., Div. One. Apr. 13, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
DOLORES ABOYTES VINIEGRA, Defendant and Appellant.

Counsel

Donald Thomas Bergerson, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney Gen-

eral, Ronald E. Niver and Richard G. Tullis, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—Defendant Dolores Aboytes Viniegra was convicted on a jury's verdicts of (count one) fraud in obtaining public aid in violation of Welfare and Institutions Code section 11483, (count two) perjury in violation of Penal Code section 118, and (count three) fraudulent acquisition of federal food stamps in violation of Penal Code section 396. She was thereafter placed upon conditional probation.

Her appeal from the "judgment" was obviously intended to be from the order granting probation. (See Pen. Code, § 1237, subd. 1.) We so consider it.

No contention is made that the evidence placed before the jury was insubstantial, or insufficient to support the jury's verdicts.

We first consider defendant's contention that: "The impeachment of key defense witnesses for 1) alienage and 2) use of prescription drugs was offensive misconduct by the People."

A witness testified that he had paid rent money for property, contended by the prosecution to be owned by defendant, to a person other than defendant contrary to the prosecution's theory. In an attempt to impeach him for motive and bias, the prosecution on cross-examination developed that the witness was an illegal alien and that he worked at the same place as defendant's husband. The question was then asked if he was not testifying for defendant in fear that he would otherwise be "turned in as an illegal alien . . . ." An objection of "irrelevant and also highly prejudicial" was overruled, and the witness answered, "I'm not afraid. No. They would be returning me to my native land."

We observe no contention that the cross-examination was conducted in bad faith in order to bring nonexistent matter before the jury. Subject to the rationale of Evidence Code section 352, a witness may be impeached to establish motive, or bias. (Evid. Code, § 791, subd. (b).) We observe no prosecutorial misconduct or abuse of the trial court's

discretion in such matters. Moreover, were we to assume error, arguendo, we should be obliged to declare it harmless under the state's Constitution, article VI, section 13, and *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] (cert. den., 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70]).

█ Defendant's mother, a prospective defense witness, had attended court with defendant. Out of the jury's presence the prosecutor stated: ". . . Your Honor. For the record, we approached the bench and it appeared to me that Mrs. Aboytes was under the influence of either alcohol or drugs or combination of the two when she walked in. And I want to voir dire her on her competency to testify at this point." The requested permission was granted. The witness testified that she had taken Thorazine that morning to "relax her mind," and that the day before she had been under its influence, and that she ingested it "in the morning, noon and night." Thereafter, following direct examination before the jury the following questions were asked, and answers given: "Q. Are you under the influence of drugs today? A. Yes. I took them this morning, Thorazine, at 7:30 this morning. . . . Q. Are these prescription drugs? A. Yes, by Dr. Alles."

Again we observe neither abuse of judicial discretion nor prosecutorial misconduct. It is well established that a witness may be questioned as to whether he or she has recently used, or is under the influence of, drugs. (*People v. Rocha* (1971) 3 Cal.3d 893, 901 [92 Cal.Rptr. 172, 479 P.2d 372]; *People v. Hernandez* (1976) 63 Cal.App.3d 393, 405 [133 Cal.Rptr. 745]; *People v. Smith* (1970) 4 Cal.App.3d 403, 411 [84 Cal.Rptr. 229]; *People v. Ortega* (1969) 2 Cal.App.3d 884, 899-902 [83 Cal.Rptr. 260].)

█ It is also contended that: "The defense herein was stymied by the prosecution's refusal to specify incidents of appellant's alleged perjury."

Count two (perjury) of the information charged, as here relevant: "The said Dolores Aboytes Viniegra on or about and between August 15, 1977 and May 1, 1980, . . . being a person who testified, declared, deposed and certified under oath and under penalty of perjury on an application and inquiry for renewal of aid and medical assistance provided for in Welfare and Institutions Code Section 11265 that said defendant and applicant met and continued to meet the specified conditions of eligibility for aid and medical assistance, did willfully, knowingly, and with intent to deceive, state as true on said application

and in response to said inquiry material matters which she knew to be false, to wit: (1) Did fail to report that the absent parent was in the home; (2) Did fail to report acquisition of real and personal property; (3) Did fail to report income; and (4) Did fail to report that she was living outside of Santa Cruz County; ..."

At the trial the prosecution produced evidence tending to establish perjury in respect of 26 separate documents. Defendant timely moved that the prosecutor be compelled "to elect one of those documents as the basis for his one count of perjury." The motion was denied. The denial is the basis of the instant contention.

We note initially that the several documents appeared to constitute monthly renewal, and reiteration, of statements designed to obtain continued public aid and assistance.

It will reasonably be said that they were a series of acts forming part of one and the same transaction, and that as a whole they constituted but one and the same offense. They were so interconnected that proof of each of the offenses tended to establish commission of the others. Evidence of each of the offenses was properly admitted at the trial, since it is established law that "[o]ther offenses may be shown where several crimes are interconnected so that proof of the others tends to establish the crime charged, ..." (Witkin, Cal. Evidence (2d ed. 1966) Circumstantial Evidence, § 348, p. 308; and see *People v. Carmen* (1954) 43 Cal.2d 342, 345 [273 P.2d 521]; *People v. Jackson* (1950) 36 Cal.2d 281, 285-286 [223 P.2d 236] [cert. den., 340 U.S. 922 (95 L.Ed. 666, 71 S.Ct. 355)].) And: "It has long been held that '"If several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others, *evidence of any or all of them is admissible against a defendant on trial for any offense which is itself a detail of the whole criminal scheme."*'" (Italics added; *People v. Thomas* (1970) 3 Cal.App.3d 859, 863 [83 Cal.Rptr. 879]; *People v. Ciulla* (1919) 44 Cal.App. 719, 722 [187 P. 49].)

In such a context the law does not require the prosecutorial election contended for by defendant. "The law does recognize an exception to the rule requiring election '"where a series of acts form part of one and the same transaction, and as a whole constitute but one and the same offense."'" (*People v. Mota* (1981) 115 Cal.App.3d 227, 233 [171

Cal.Rptr. 212]; and see *People* v. *Jefferson* (1954) 123 Cal.App.2d 219, 221 [266 P.2d 564]; *People* v. *Cossey* (1950) 97 Cal.App.2d 101, 113 [217 P.2d 133]; *People* v. *Simon* (1913) 21 Cal.App. 88, 90 [131 P. 102].)

It is further noted that the trial court instructed the jury in the language of CALJIC No. 7.25 that: "When it is charged that the defendant made more than one perjured statement, it is necessary to prove that she made at least one of such statements. All the jurors must agree upon the statement found to have been perjured." Their verdict thus reflected a unanimous finding that defendant had committed at least one specific act of perjury.

And it may reasonably be said that defendant suffered no prejudice from the procedure followed by the prosecutor, for that official might properly have charged her separately with each of the 26 acts of perjury which the evidence tended to establish.

The contention is found invalid.

Defendant's remaining contention is that: "Failure to instruct that perjury requires intent to falsely *swear* was error which unfairly undermined the defense and forced conviction."

Here we find merit.

Initially, it should be observed that we are not here concerned with whether the defendant intentionally made false statements in order to obtain public welfare aid and assistance; the evidence abundantly tends to show that she did. We are instead concerned with whether those false statements were *intentionally made under penalty of perjury.* If they were not, although other crimes may have been committed thereby, the crimes of perjury were not established.

It is, of course, settled law that: "Jury instructions must be responsive to the issues, which in a criminal case, are determined by the evidence . . . ." (*People* v. *Preston* (1973) 9 Cal.3d 308, 319 [107 Cal.Rptr. 300, 508 P.2d 300].) There is an "'obligation to instruct on defenses [raised by the evidence where] it appears that the defendant is relying on such a defense, . . .'" (*People* v. *Stewart* (1976) 16 Cal.3d 133, 140 [127 Cal.Rptr. 117, 544 P.2d 1317].) And: "The court must give any correct instructions on defendant's theory of the case which the

evidence justifies, no matter how weak or unconvincing that evidence may be." (*People* v. *Bynum* (1971) 4 Cal.3d 589, 604 [94 Cal.Rptr. 241, 483 P.2d 1193] [overruled on other grounds *People* v. *Williams* (1976) 16 Cal.3d 663, 669 (128 Cal.Rptr. 888, 547 P.2d 1000)].)

The following evidence, although in large measure controverted, was adduced at the trial.

Defendant, a welfare aid recipient, was "coded" by the welfare department as an "illiterate." In grammar school "they put [her] in a special class with retarded kids." In applying for aid she had told the agency (1) that the father of her children was absent from home, (2) that she had no real or personal property, (3) that she lived in Santa Cruz County, and (4) that she received no rental income. (By their verdict the jury found that one or more of these statements was false.) She was given forms by the agency with space for such statements to be put in writing under which was a printed sentence such as, "I declare under penalty of perjury that the foregoing is true and correct." And underneath that sentence was a printed line for the signature of the welfare applicant. The forms were usually taken home by defendant where her sister filled them out. Usually defendant signed the completed form at home, and mailed it in to the welfare office. However, sometimes "my sister would write it down and I'd sign it and bring it down." In some cases she brought it down unsigned; the welfare worker then "checks them off" and then "give me and say read this and sign here." Sometimes the welfare worker "would ask me if I—do you understand this? And I said yes, I do." A welfare worker testified, "I don't think I did explain perjury." Defendant did not understand that she was signing the forms "under penalty of perjury." "Perjury was [later] explained to me by a D.A. through the phone what it was. That's when they explained —that's when they told me you can go to jail for lying."

Under this evidence, if believed by the jury, defendant lacked the *specific intent* to declare falsely under oath or penalty of perjury. Such a specific intent is an essential element of the crime of perjury. (*People* v. *Rodley* (1900) 131 Cal. 240, 260 [63 P. 351]; *People* v. *Walker* (1967) 247 Cal.App.2d 554, 563 [55 Cal.Rptr. 726] [cert. den., 389 U.S. 824 (19 L.Ed.2d 77, 88 S.Ct. 60)]; *People* v. *Guasti* (1952) 110 Cal.App.2d 456, 464 [243 P.2d 59].)

We look to the trial court's instruction on the elements of perjury. Among other things, and as here relevant, they were told:

"In order to prove the commission of the crime of perjury, each of the following elements must be proved: 1. That a person declared under penalty of perjury that the statements were true and correct, ... 4. That such person had the specific intent to declare falsely."

The jury might readily have concluded that the demand of element 1 had been met, for the statements at issue *recited under penalty of perjury* that they were true and correct.

But it will be observed that element 4 fell short of instructing that a specific intent to declare falsely *under oath or penalty of perjury* was required. The jury could readily, perhaps more readily, have construed its language as requiring only a specific intent to make false statements to the welfare agency without, as testified and contended by defendant, the intent that the statements be under oath or penalty of perjury.

To clarify the matter defendant proffered the following instruction: "An essential element of Perjury under Penalty of Perjury is that the person making the declaration *must be aware that the declaration was being made under penalty of perjury.* If you find that the defendant was aware that she was signing a particular document under penalty of perjury, then this essential element will be proven. If, on the other hand, you find that the defendant was unaware that a particular document was signed under penalty of perjury, then that particular document cannot be the basis for a finding that perjury under penalty of perjury was in fact committed." (Italics added.)

At this point we divert our inquiry toward relevant judicial authority.

It is said that: "'Perjury requires a higher measure of proof than any other crime known to the law, treason alone excepted.'" (*People* v. *O'Donnell* (1955) 132 Cal.App.2d 840, 845 [283 P.2d 714]; *People* v. *De Martini* (1920) 50 Cal.App. 109, 112 [194 P. 506].) The law looks to "both the quantity and quality of evidence essential to a conviction of this offense" (*People* v. *Di Giacomo* (1961) 193 Cal.App.2d 688, 693 [14 Cal.Rptr. 574]), and "positive" in contradistinction to "circumstantial" evidence is required (*id.,* at p. 693). "It is ... necessary to have positive testimony as to facts that are absolutely incompatible with the innocence of the accused." (*People* v. *Macken* (1939) 32 Cal.App.2d 31, 35 [89 P.2d 173].)

■ "[I]t is not sufficient to support the charge of perjury that the accused swears to a material fact that is false, *the false swearing must be knowingly and wilfully done.*" (Italics added; *Green* v. *Stewart* (1930) 106 Cal.App. 518, 528 [289 P. 940].) And as we have pointed out, in addition to knowingly making a false statement, there must be a *specific intent* that the false statement be under oath or penalty of perjury.

Elsewhere in the nation it is consistently held that: "'To make a valid oath, for the falsity of which perjury will lie, there must be in some form . . . *an unequivocal and present act, by which the affiant consciously takes upon himself the obligation of an oath.*'" (Italics added; *People* v. *Swasey* (1924) 122 Misc. 388 [203 N.Y.S. 22, 25].)

The rule of *People* v. *Swasey* has been reiterated in *People* v. *Lieberman* (1968) 57 Misc.2d 1070 [294 N.Y.S.2d 117, 118], *O'Reilly* v. *People of State of New York* (1881) 86 N.Y. 154, 162, *Rogers* v. *People* (1966) 161 Colo. 317 [422 P.2d 377, 381], *Youngker* v. *State* (Fla.App. 1968) 215 So.2d 318, 321, and *Bauknight* v. *State* (1943) 68 Ga.App. 813 [24 S.E.2d 217, 219].

■ By virtue of the foregoing we conclude that the trial court, under the evidence of the case and the issues and defense raised by defendant, should have given a jury instruction such as was proffered by her—thus making it clear that in addition to an intentional false statement, a conviction for perjury requires that the accused have the *specific intent* that it be made under oath, or penalty of perjury.

The order granting probation is affirmed as to defendant's convictions under counts one and three; it is reversed as to her conviction under count two.

Racanelli, P. J., and Goff, J.,* concurred.

A petition for a rehearing was denied May 5, 1982.

---

*Assigned by the Chairperson of the Judicial Council.