Filed 11/5/15  P. v. Rueda and Caudillo CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050101 |
| v. | (Super. Ct. No. 13 CF3684) |
| PETER RUEDA AND MARIA GUADALUPE CAUDILLO, | O P I N I O N |
| Defendants and Appellants | |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Affirmed.

John E. Edwards, under appointment by the Court of Appeal, for Defendant and Appellant Peter Rueda.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant Maria Guadalupe Caudillo.

Kamala D. Harris, Attorney General, Gerald A. Engle, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

Peter Rueda and Maria Guadalupe Caudillo were convicted by a jury of several crimes in connection with the theft of two leaf blowers.

Rueda challenges the sufficiency of the evidence to prove a conviction for false personation (Pen. Code, § 529, subd. (a)(3); all further statutory references are to the Penal Code, unless otherwise stated). He also claims trial counsel provided ineffective assistance by conceding guilt of the false personation charge. Because Rueda both falsely personated, and while in this assumed personality, committed a separate act that subjected the impersonated individual to criminal liability, substantial evidence supports the false personation conviction. In light of the evidence and counsel's reasonable tactical decision to focus on other charges, Rueda's ineffective assistance of counsel claim is meritless.

Caudillo contends the trial court deprived her of due process of law and the right to confront and cross-examine adverse witnesses by precluding her attorney, under Evidence Code section 352, from admitting evidence about the immigration status of three prosecution witnesses for impeachment. But, in our view, the trial court acted within its broad discretion under Evidence Code section 352 by excluding highly inflammatory and minimally relevant evidence of immigration status. Consequently, the judgment is affirmed.

## FACTS

Early one morning in November 2013, Santos Rojas[1] drove his friend and coworker, Jose Lozano, to a doughnut shop on Fairview Avenue in Santa Ana before starting their workday as gardeners. They intended to meet Santos's brother, Sebero Rojas, who was also a gardener and drove a truck. Santos carried various tools of their

---

[1] We refer to members of the Rojas family by their first names for clarity and not out of any disrespect.

2

trade in the back of his truck. His tools included two leaf blowers worth about $475 each.

Santos and Lozano went inside the doughnut shop to buy coffee while Sebero waited outside. As Santos was putting sugar and milk in his coffee, he heard somebody yell, "You're being robbed." After the second such exclamation, Santos looked outside and realized someone had taken the leaf blowers out of his truck. When he ran outside, Santos saw Sebero yelling at three people, Rueda, an unidentified male, and Caudillo. Rueda and Caudillo were sitting in Rueda's car, and Caudillo had a leaf blower on her lap.

Sebero moved his truck to block Rueda's car. Santos attempted to retrieve one of his leaf blowers from the back of Rueda's car, but Caudillo got out of the car and came at Santos with a tire iron. She twice tried to hit Santos, but missed both times, connecting instead with Rueda's car window. Santos ran for Sebero's truck while Caudillo repeatedly bashed the windshield of Santos's truck. Then, she picked up the tire iron and threw it at Sebero's truck.

This prompted Rueda to join the fray. He got out of his car, retrieved a blowtorch, and lit it. Rueda held the flame about a foot away from Sebero's face and told him to move his truck. Santos told Rueda to leave his brother alone, which prompted Rueda to turn around and walk toward Santos. Santos stepped back, but Rueda pressed forward. As Rueda tried to burn Santos, Santos asked, "why are you doing this? Why are you stealing?" Rueda said, "it's my job."

At this point, Rueda got back in his car. Caudillo had tried to start Sebero's truck, but Sebero had taken the keys. As she stood by, a police officer arrived and took control of a chaotic scene. The officer ordered Rueda to get out of his car and raise his hands. Rueda complied. When asked for identification, Rueda gave his brother's name, date of birth, and driver's license number as his own. He also told the officer he was the victim of a crime and unarmed, although Santos testified Rueda threatened to pull out a

3

gun in addition to waving the blowtorch. He also made the following statements: "I didn't do anything," "what's the big deal? I'll buy him a new blower," and "come on, it's just a blower."

Following Rueda's arrest, police officers found a blowtorch and a tire iron in Rueda's car, and they located a second tire iron underneath Seberos's truck. During a police interview, Rueda insisted he had been the victim of an assault, and that he had been falsely accused of theft. He told his interviewers that he had gone "to get a doughnut, and suddenly somebody accused him of stealing leaf blowers."

Caudillo turned to walk away from the scene, but bystanders pointed her out and an officer detained her. Caudillo initially identified herself as Jenny Benitez, but later recanted and gave her true name during the ride to jail. When questioned by the police, Caudillo said she did not know Rueda, but she intervened because she believed Rueda was the assault victim.

A jury convicted Rueda of using a deadly weapon to commit second degree robbery, two counts of assault with a deadly weapon, and false personation. Caudillo was convicted of personally using a deadly weapon to commit second degree robbery, one count of assault with a deadly weapon, two counts of misdemeanor vandalism, and one count of false representation to a police officer. The court sentenced Rueda to serve five years and eight months in prison. Caudillo received a four-year prison sentence. This appeal followed.

**DISCUSSION**

*1. Rueda's Challenge to the Sufficiency of the Evidence*

Rueda challenges the sufficiency of the evidence to prove false personation. (§ 529, subd. (a)(3).) When addressing such claims, the reviewing court evaluates the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable

4

doubt.  (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319; *People v. Story* (2009) 45 Cal.4th 1282, 1296; *People v. Johnson* (1980) 26 Cal.3d 557, 578.)  Moreover, we accept any logical inferences the jury could have drawn from the circumstantial evidence because the jury, not the reviewing court, must be convinced of the defendant's guilt beyond a reasonable doubt.  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357-358.)

Section 529 makes it a criminal offense to falsely personate, or impersonate, another person, and in that assumed personality do "any . . . act whereby, if done by the person falsely personated . . . might . . . become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or to any other person." (§ 529, subd. (a)(3).)  According to the statute, the prosecution must prove the defendant tendered a false identification, and while in that false identity, also committed an "act separate from the false identification" that exposes the individual impersonated to civil or criminal liability.  (*People v. Guion* (2013) 213 Cal.App.4th 1426, 1434 (*Guion*).)

Relying on *People v. Chardon* (1999) 77 Cal.App.4th 205 (*Chardon*) and *People v. Stacy* (2010) 183 Cal.App.4th 1229 (*Stacy*), the Attorney General argues Rueda falsely identified himself as his brother, and while in this assumed personality, he also subjected his brother to criminal prosecution by making incriminating statements.  We find the Attorney General's argument persuasive.

In *Chardon,* the defendant was convicted of false personation after she falsely identified herself to police as her sister when she was stopped for speeding. (*Chardon*, *supra*, 77 Cal.App.4th  at pp. 208-209.)  The defendant used her sister's full name and birth date to assert the false identity, but she also signed her sister's name to the citation's promise to appear.  (*Id.* at p. 209.)

On appeal, the defendant argued her acts were all "'part of the act of providing the false information' and did not include 'any other act' which would expose her sister to liability."  (*Chardon*, *supra*, 77 Cal.App.4th p. 212.)  The appellate court

5

disagreed, concluding instead that by signing her sister's name to the promise to appear, the defendant had committed an additional act that exposed her sister to further criminal liability. (*Ibid.*)

In *Stacy*, *supra*, 183 Cal.App.4th at page 1234, the defendant gave her cousin's name and an incorrect birth date to a police officer following her detention for driving under the influence. Then, while pretending to be her cousin, the defendant refused to complete a required breathalyzer test or give a blood sample, notwithstanding advisements that her refusal to complete these tests would result in the automatic suspension of her driver's license. (*Id.* at pp. 1232-1233.)

On appeal, the defendant argued there was no evidence she committed an additional act beyond falsely identifying herself. (*Stacy*, *supra*, 183 Cal.App.4th at p. 1235.) However, the appellate court found sufficient evidence to convict the defendant on the charge of false personation because she "refused to complete the mandatory second breath test or consent to having her blood drawn," which put her cousin "at risk of liability for refusing to submit to and/or complete the chemical testing requirements." (*Ibid.*)

In this case, as in *Chardon* and *Stacy*, Rueda was arrested at the scene of a crime. The responding police officers found a chaotic scene with multiple victims. When asked for identification, Rueda gave his brother's name, birth date, and driver's license number. Then, at the scene, while he continued to hold himself out as his brother, Rueda said, "I didn't do anything," "what's the big deal? I'll buy him a new blower," and "come on, it's just a blower." These statements are reasonably interpreted as admissions of guilt to the charge arising out of the robbery. In fact, Rueda's statements were admitted for this purpose at trial. (Evid. Code, § 1220.) Here, Rueda made incriminating statements while holding himself out as his brother. By doing so, he subjected his brother to potential criminal liability for charges arising out of the robbery.

6

Thus, the prosecution proved the false personation offense under section 529, subdivision (a)(3).

Rueda asserts his statements were not an "additional act" under section 529. Instead, he asserts his statements were part of the false personation. But, as noted, Rueda's statements related to charged crimes, and this fact distinguishes his case from the cases on which he attempts to rely. (*Guion*, *supra*, 213 Cal.App.4th 1426, *People v. Cole* (1994) 23 Cal.App.4th 1672 (*Cole*), and *People v. Casarez* (2012) 203 Cal.App.4th 1173 (*Casarez*)).

In *Guion*, *Cole*, and *Casarez,* the so-called additional act was nothing more than additional false identification information. In *Guion*, the defendant produced a false and adulterated driver's license in the same name the defendant verbally claimed as her own. (*Guion*, *supra*, 213 Cal.App.4th at p. 1435.) In *Cole*, the defendant confirmed the middle name and birth date of the person he had already claimed to be. (*Cole*, *supra*, 23 Cal.App.4th at p. 1676.) And, in *Casarez*, the defendant did not commit an additional act when he attempted to use his brother's birth certificate after identifying himself as his brother. (*Casarez, supra*, 203 Cal.App.4th at p. 1192.)

Here, by contrast, Rueda gave his brother's name, and while maintaining this false identity, he made incriminatory statements unrelated to his false identity. Rueda's false personation could have subjected his brother to criminal liability. Therefore, the evidence is sufficient to support the jury's guilty verdict.

Alternatively, Rueda claims his trial attorney provided constitutionally deficient representation because counsel conceded Rueda's guilt on the false personation charge. When considering such claims, we are mindful that the defendant bears the burden of proving a claim of ineffective assistance of counsel. (*People v. Camden* (1976) 16 Cal.3d 808, 816.) And, when, as here, counsel has had no opportunity to explain his or her conduct, we will not find ineffective assistance of counsel unless there could be no satisfactory explanation. (*People v. Lewis* (1990) 50 Cal.3d 262, 288.)

7

In Rueda's case, defense counsel vigorously argued his client's innocence of the more serious robbery and assault charges. Given the strength of the evidence to support the false personation charge, trial counsel could have made a reasonable tactical decision to concede guilt on the less serious crime in an effort to gain credulity with the jury and focus their attention on the other, more serious, offenses. (*People v. McPeters* (1992) 2 Cal.4th 11148, 1186-1187.) Furthermore, the strength of the evidence to prove false personation establishes that Rueda suffered no prejudice as a result of counsel's tactical decision. (*People v. Ledesma* (1987) 43 Cal.3d 171, 217-218.)

2. *Caudillo and the Court's Exclusion of Immigration Status*

Prior to trial, Caudillo moved to impeach Santos, Sebero, and Lozano with evidence of their immigration status. Defense counsel presumed the witnesses were undocumented aliens because they were day laborers, gardeners, and Spanish speakers, and he also presumed their undocumented status was relevant to their credibility. The prosecutor noted the absence of evidence about the witnesses' immigration status, but assuming the witnesses' immigration status made them subject to deportation, the prosecutor also claimed this fact had no bearing on the witnesses' credibility.

The court denied the defense motion, citing Evidence Code section 352. First, the court pointed out there was "no concrete evidence" the witnesses were subject to deportation due to their immigration status. Second, the court found the risk of prejudice too great to admit such evidence. "[T]his is a hot button issue here in Orange County. And before you go showing someone's illegal status, you better have all your ducks in order. It better be demonstrable that they are illegal, and there better be an awfully important reason why you would go down that road." And, finally, the court stated any "minimal relevance" was substantially outweighed by the potential for prejudice.

On appeal, Caudillo claims the court's ruling excluding evidence of Santos's, Sebero's, and Lozano's immigration status prevented her from completely

8

cross-examining these witnesses and deprived her of the constitutional right to due process and cross-examination. We disagree.

"The rules regarding the admissibility of evidence are well established. Only relevant evidence is admissible. [Citation.] Evidence is relevant if it has 'any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' [Citation.] 'The test of relevance is whether the evidence tends "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive. [Citations.] The trial court retains broad discretion in determining the relevance of evidence.' [Citations.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 995.)

"This discretion extends to evidentiary rulings made pursuant to Evidence Code section 352. [Citation.]" (*People v. Tully* (2012) 54 Cal.4th 952, 1010 (*Tully*).) That section provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

In this case, the court determined the witnesses' immigration status had little relevance to their credibility. Caudillo asserts this was error because immigration status is highly relevant to witness credibility and bias. She primarily relies on *People v. Viniegra* (1982) 130 Cal.App.3d 577 (*Viniegra*). But Caudillo's reliance is misplaced.

In *Viniegra*, the defendant was prosecuted for fraud in obtaining public aid and food stamps and for committing perjury. (*Viniegra*, *supra*, 130 Cal.App.3d at p. 580.) The prosecution theorized that the defendant owned property and collected rent, which was contrary to her claims of indigence. A defense witness testified that he had paid rent to someone other than the defendant. The prosecutor attempted to impeach this witness for motive and bias by showing "the witness was an illegal alien and that he worked at the same place as defendant's husband." (*Ibid.*)

9

At trial, "[t]he question was then asked if [the witness] was not testifying for defendant in fear that he would otherwise be 'turned in as an illegal alien . . . .'" (*Viniegra*, *supra*, 130 Cal.App.3d at p. 580.)  The court overruled objections on grounds of relevance and prejudice, "and the witness answered, 'I'm not afraid.  No.  They would be returning me to my native land.'"  (*Ibid.*)

On appeal, the defendant argued reversal on the grounds of "'offensive misconduct'" by the prosecutor in "'[t]he impeachment of key defense witnesses for . . . alienage . . . .'"  (*Viniegra*, *supra*, 130 Cal.App.3d at p. 580.)  But the appellate court found no prosecutorial misconduct or abuse of the trial court's discretion under Evidence Code section 352 in the admission of evidence that the witness's immigration status gave the defendant leverage over the witness.  (*Id.* at p. 581)  Consequently, in *Viniegra*, immigration status was relevant.

*Viniegra* is distinguishable.  For one thing, in *Viniegra*, the prosecutor knew the witness's immigration status and affirmatively demonstrated that the defense witness actually had a provable motive to lie on the defendant's behalf in exchange for her agreement not to turn him in as an illegal alien.  Here, defense counsel had no information about the witnesses' immigration status, and nothing more than speculation as to how that status might affect the witnesses' credibility.  Rather, defense counsel merely assumed the witnesses were undocumented, and then argued the witnesses' undocumented status was somehow relevant to their credibility.  Counsel's argument was simply speculative.

Moreover, under *People v. Wheeler* (1992) 4 Cal.4th 284, "the admissibility of any past misconduct for impeachment is limited at the outset by the relevance requirement of moral turpitude."  (*Id.* at p. 296, fn. omitted.)  Caudillo has not provided us with published case authority establishing that illegal immigration is a crime involving moral turpitude, and the California Supreme Court recently decided that the presence of an undocumented immigrant in the United States without lawful authorization "does not

10

itself involve moral turpitude." (*In re Garcia* (2014) 58 Cal.4th 440, 460.)  Thus, the trial court retained broad discretion to exclude highly prejudicial and minimally relevant evidence of immigration status, and properly excluded.  (*People v. Cunningham*, *supra*, 25 Cal.4th at p. 995.)  Because the court's application of Evidence Code section 352 was within its discretion, we find no infringement of Caudillo's constitutional right to confront and cross-examine witnesses, or due process of law.  (*Id*. at pp. 998-999; see *People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1063-1064.)

## DISPOSITION

The judgment is affirmed.


THOMPSON, J.

WE CONCUR:


ARONSON, ACTING P. J.


IKOLA, J.

11