Filed 5/18/23  P. v. Gonzalez-Buttner CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079065, D079435 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF001818) |
| ANNETTE GONZALEZ-BUTTNER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Christopher J. Plourd, Judge.  Reversed and remanded.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistance Attorney General, Robin H. Urbanksi and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

Annette Gonzalez-Buttner appeals from a judgment after a jury convicted her on four separate charges involving her use of an allegedly false address to qualify as a candidate for a position on the governing board of the Imperial County Office of Education (ICOE).  The charges, and the appeal, turn primarily on the elusive and variable legal meaning of the word "residence."

To run for a position on the ICOE board, Buttner had to maintain a "residence" within the designated trustee area in Imperial County.  Although "residence" often means something broader, in this specific context, the relevant statutes defined "residence" to mean "domicile."  Buttner did live with her parents in Imperial County when she was first elected in November 2013, but, about a year later, she obtained a temporary job in Santa Clara and, thereafter, she signed a lease on an apartment and enrolled three of her four children in public schools in Santa Clara.  Meanwhile, Buttner kept her old room at her parents' apartment, and continued to receive mail and maintain her voter's registration there.  Buttner ran again for the same position in November 2017 and used her parents' apartment address on her candidacy forms.  She also used that same address on an application for a driver's license she submitted around the same time.

The District Attorney for Imperial County filed a complaint against Buttner in 2019, charging her with two counts of perjury by declaration (Counts 1 and 4), one count of false declaration of candidacy (Count 2), and one count of grand theft by fraudulent misappropriation (Count 3), based on allegations that she knowingly used a false address on the various forms.  Buttner did not testify at trial, but the defense asserted she had—or at least honestly believed she had—maintained her domicile at her parents'

2

apartment and therefore did not knowingly provide a false address on any of the forms. The jury convicted Buttner on all four counts.

On appeal, Buttner argues the trial court made numerous instructional, evidentiary, and other errors, including several related to the definitions of "residence" and "domicile," and that the verdicts were not supported by substantial evidence. We agree that the trial court did not adequately instruct the jury as to the meaning of "residence" and "domicile." And we conclude, further, that the error was prejudicial and requires reversal of all four counts. At the same time, we conclude there was sufficient evidence to support the verdicts. We therefore reverse the convictions and remand the matter to the trial court for further proceedings.

In a second, now consolidated appeal, Buttner asserts that she is entitled to resentencing under recent changes to Penal Code section 654, enacted by Assembly Bill No. 518 (Stats. 2021, ch. 441, § 1) (Assembly Bill 518), and that the trial court erred in ordering her to pay substantial sums in restitution.[1] Because we reverse the convictions based on the instructional error, we need not address these additional arguments. If Buttner is retried and convicted on remand, she shall be entitled to new hearings on sentencing and restitution and amended Penal Code section 654 will necessarily apply.

---

[1] Buttner filed two separate notices of appeal and this court initially assigned two different case numbers, D079065 and D079435. The court has since consolidated the two appeals under case number D079065.

FACTUAL AND PROCEDURAL BACKGROUND

I.    *Evidence Presented at Trial*[2]

Buttner grew up in the city of Calexico, in Imperial County, California. Buttner's parents, Juan and Yolanda Gonzalez, moved into a three-bedroom apartment on Rockwood Avenue (the Rockwood Apartment) in the early 1980's.  The Gonzalez's had three children, including Buttner, and each lived at the Rockwood Apartment at various times over the years.  But, for the majority of the time they lived there, including at the time of trial, Juan and Yolanda Gonzalez were the only ones listed on the lease agreement.  The Gonzalez's received federal housing assistance, and met with a representative from the Housing Authority annually to verify their income and confirm that they continued to qualify for subsidized housing.

Buttner graduated from high school in Calexico in 1983.  She attended college at the University of California, Santa Cruz for about three years, but continued to "come and go" at the Rockwood Apartment.  Buttner moved back to Calexico sometime around 2010, to be closer to her parents.  By that time, Buttner had four children of her own, and, at least initially, they all stayed at the Rockwood Apartment with Buttner's parents.

Buttner asked to be added to the lease for the Rockwood Apartment, but her request was denied.  The maximum number of residents for the apartment was six.  If Buttner and her four children lived there along with

---

2      "In light of the sufficiency of the evidence contentions that follow, we set forth the facts here in the light most favorable to the judgment," while also providing additional details relevant to the asserted instructional errors. (*People v. Lee* (2011) 51 Cal.4th 620, 625, fn. 5; see *Henderson v. Harnischfeger Corp.* (1974) 12 Cal.3d 663, 674 (*Henderson*) ["in determining whether or not the instructions given are correct, we must assume that the jury might have believed the evidence upon which the instruction favorable to the losing party was predicated"].)

her two parents, there would be seven, and the apartment manager would consider the apartment overcrowded. As a result, Buttner and her children were not legally allowed to live at the Rockwood Apartment. The manager testified the complex was "pretty lenient," but if the tenants did not follow the rules, they could be evicted.

Buttner and her children moved into their own apartment on McKinley Street, also in Calexico, for a year or two, but then moved back to the Rockwood Apartment sometime around 2012 or 2013. When they left the McKinley Street apartment, they moved all their things, including their furniture, to the Rockwood Apartment. Buttner's parents kept their same bedroom, Buttner and her two daughters shared the second bedroom, and Buttner's two sons shared the third.

Buttner worked for the Calexico Unified School District at the time, and her four children all went to Calexico Unified School District schools. Her oldest daughter, Analise, attended a home school program for one year in 7th grade, but returned to Calexico public schools for her 8th grade year.

Buttner registered to vote using the Rockwood Apartment address in May 2013. The Registrar of Voters mailed voter registration documents to Buttner at the Rockwood Apartment, which Buttner signed and returned.

*The 2013 Election*

Buttner first ran for a position on the ICOE board, as a representative from Trustee Area One, in the November 2013 election. To be placed on the ballot, Buttner had to be a resident of Trustee Area One and had to submit several forms to the Registrar of Voters verifying her residency and other details about her candidacy.

Buttner filed a California Form 460, Recipient Committee Campaign Statement, identifying loans her campaign had received from July 1 to

5

December 31, 2013.  Buttner listed herself as a lender to her own campaign and listed the apartment on McKinley Street as her "street address."  The form itself was not dated, but Buttner listed August 20, 2013 as the date the loan was incurred.  Buttner also filed a form 410, Statement of Organization Recipient Committee, which was dated, December 30, 2013.  On that form Buttner listed the Rockwood Apartment as her "street address."  The parties stipulated that both the McKinley Street apartment and the Rockwood Apartment fell within Trustee Area One.

Buttner won the election, and obtained a seat on the ICOE governing board.  As a board member, she was eligible to receive health and welfare benefits at the same rate as certificated management employees of the ICOE.  She also received a stipend of $210 a month for attending board meetings and compensation for the cost of travel to qualifying conferences.  However, the position created a conflict that disqualified her from maintaining her job with the Calexico Unified School District.

*Buttner Begins Spending Time in Santa Clara*

Meanwhile, Buttner's partner, Christopher Stampolis was living in Santa Clara.  Stampolis applied for a post office box in Santa Clara on October 9, 2012.  He put Buttner's name on the application and listed an apartment on Kiely Boulevard in Santa Clara as his address.

Buttner obtained a temporary job working for a local labor union in Santa Clara and, in the summer of 2014, she took her two daughters to Santa Clara and enrolled them in a "College for Kids" summer program.  They stayed with Stampolis and his two children at his apartment on Kiely Boulevard.  At first, the girls thought they were just visiting for the summer, but, eventually, Buttner enrolled them and their brother, Julian, in public school in Santa Clara.  Lenise started 6th grade, Analise started 9th grade,

6

and Julian started 11th grade, all in Santa Clara, in the fall of 2014. Buttner believed the public schools in Santa Clara were better than those in Calexico.

Not long after, on October 8, 2014, Buttner and Stampolis submitted a rental application for a different, larger apartment in the same apartment complex on Kiely Boulevard in Santa Clara. Buttner stated she was working for the Laborer's Union in San Jose on the application. Buttner and Stampolis each signed a one-year lease for an apartment on Kiely Boulevard, from October 2014 to October 2015.

Buttner's oldest son, Christian, stayed in Calexico to finish high school. Certified records from Calexico High School listed Christian's home and mailing address as 1149 Cabana Street. Buttner's brother, Ruben Gonzalez, lived at the Cabana Street address, and Ruben was listed as Christian's emergency contact. However, Christian's girlfriend testified that he was actually living at the Rockwood Apartment with his grandparents.

Buttner would return to Calexico at least once a month to attend ICOE board meetings, and to visit Christian and her parents. Stampolis and her other children would go with her to Calexico sometimes, but other times they stayed in Santa Clara so the children would not miss school. When the children did go to Calexico, they would only stay a few days, because they had to get back for school, but when Buttner went alone, she would sometimes stay in Calexico for a week or more.

Buttner filed additional Form 460, Recipient Committee Campaign Statements with the Registrar of Voters, declaring campaign contributions and expenses received from July 2013 through the end of 2014. She listed the Rockwood Apartment as her street address on each of the forms.

*The Investigation*

In April of 2015, the County Superintendent of Schools for Imperial County, Dr. Todd Finnell, received a complaint about Buttner. According to Finnell, "[t]he nature of the complaint was that . . . Ms. Buttner and Mr. Stampolis had enrolled their children -- had established residency in the district and enrolled their children in the schools of the Santa Clara Unified School District, . . . and yet [Buttner] was also an elected official in Imperial County." The initial complaint came from Susan Harris, a principal at a school in Santa Clara.

Finnell e-mailed Buttner on Tuesday, May 12, 2015. He told Buttner that he had become aware of concerns regarding the requirement that she be a resident of the district to serve on the ICOE Board. He said he would like to have a meeting about it with her and the Board President. Finnell testified that Buttner refused to discuss the issue with him. But, that same day, May 12, 2015, Buttner applied to take courses at West Valley College, near Santa Clara. She listed the Rockwood Apartment in Calexico as her "permanent address" on the application, and listed Santa Clara as her "Current Mailing City."

Finnell spoke to Rodolfo Moreno, an investigator from the district attorney's office over the phone the next day. Defense counsel played a recording of the call for the jury. During the call, Finnell told Moreno that an administrator in Santa Clara had reported that Buttner signed school enrollment forms verifying her residence in Santa Clara, which raised questions as to her residency as a member of the ICOE board. He said that Buttner's response was that her domicile remained in Calexico. He thought her use of the term "domicile" was strange because "no one uses that word . . . unless they're reading statutes." He expressed concerns that Buttner was

continuing to receive compensation and medical benefits for a position he believed she was no longer qualified to hold. Finnell explained that Buttner had to sign an affidavit under penalty of perjury stating she lived in Calexico to run for the ICOE board position, but "also had to do the same thing in order to enroll her kids . . . up in Santa Clara and so clearly we know that she is either lying here or lying there."

The district attorney's office opened an investigation into the allegations. On May 22, 2015, an investigator for the district attorney's office in Santa Clara went to the Kiely Boulevard apartment to interview Buttner. He told Buttner he would like to talk to her about an investigation but did not initially say what the investigation was about. He asked how long Buttner had been living at the apartment, and she said she had been co-renting the apartment since October or November. She said she was doing that so her children could go to school in Santa Clara, but then explained that she was actually from Calexico. She explained that her oldest child was still in school in Calexico, and she continued to split her time between Santa Clara and Calexico, spending about 10 to 12 days a month in Calexico. She told the investigator that she had a temporary job with a local labor union in Santa Clara but the job had ended, so she was going to start taking classes at West Valley College.

When the investigator eventually disclosed that he was there to investigate complaints about whether Buttner remained qualified to maintain her position on the ICOE board in Calexico, she explained that her life was still in Calexico, she was registered to vote in Calexico, she had a room in Calexico, and, thus, her domicile remained in Calexico. She explained further that the elected position disqualified her from her previous job in Calexico, and there were not a lot of other opportunities for work there.

9

She said she had been looking at the law, and, specifically, a portion discussing how domicile is determined, including when a person leaves their home for temporary purposes, such as school or work.[3]  A recording of the interview was played for the jury.

Buttner sent the investigator from Santa Clara an e-mail later that same day, showing that she had been enrolled at West Valley College since at least May 14.  Buttner continued attending classes at West Valley College, and later at DeAnza College.  She also drove for Uber and Lyft, in both Santa Clara and Calexico.  The lead investigator for the district attorney's office in Imperial County, David Frazier, testified Buttner was "consistent throughout this entire investigation saying that she believes her domicile is in Calexico."

The district attorney's office obtained records from the Santa Clara Unified School District regarding Buttner's children.  Included among the records was a letter, dated February 5, 2015, from the Coordinator of Student Services for the Santa Clara Unified School District to Stampolis and Buttner, requesting verification of their children's residency within the school district, and a number of medical and utility bills listing Buttner as a resident at the Kiley Boulevard address.

At some point in or around 2015, the media in Calexico began reporting the allegations regarding Buttner's residency.  And, in December 2015, Finnell received a second complaint from Susan Harris's husband, Greg Harris.  That same month, Mr. Harris sent an e-mail to Debra Porter, the Registrar of Voters in Calexico, making similar allegations.  Porter responded

---

3      Buttner said she thought it was Education Code section 220, or 2020, through 2035, but it appears she was referring to the Elections Code, as Election Code sections 2020 through 2035 address "[d]etermination of Residence and Domicile," and contain similar language.

by stating it was her understanding that Buttner was domiciled in the correct area for her candidacy.[4]

According to Finnell, "[t]hings began to escalate" by early 2016. The Board of Supervisors, the Registrar of Voters, and other elected officials also received complaints regarding Buttner's residency. After meeting with Finnell, legal counsel for the ICOE drafted a letter, under Finnell's signature, setting out the concerns regarding Buttner's residency. Finnell sent the letter to Buttner via e-mail on January 29, 2016. He copied the other ICOE board members on the e-mail, and noted that the attached letter was also being sent by certified mail.

In the letter, Finnell requested that Buttner provide information in response to "recent credible allegations regarding your eligibility to serve as a member of the County Board of Education." He explained that "school records at the Santa Clara Unified School District indicate that you maintain permanent residency in the City of Santa Clara where your children are enrolled in school," and that, pursuant to Education Code section 35107, "a member of the governing board of a school district must be a resident of the district [in which they serve] during the entire term." He asserted:

---

[4] In her written response to Greg Harris's e-mail, Porter cited Elections Code section 2021, subdivision (a), and explained, "a person that leaves his or her home to go into another state or precinct in this state for temporary purposes merely, with the intention of returning, does not lose his or her domicile." The trial court sustained objections as to hearsay and calling for a legal conclusion when defense counsel attempted to question Porter about her response, and later refused to admit the e-mail into evidence, finding that it would be confusing to the jury under Evidence Code section 352 because it addressed legal issues in the case.

"In determining the place of residence, the following rules apply:

"1.  A place where one remains when not called elsewhere for labor or special or temporary purpose and to which he or she returns in seasons of repose;

"2.  There can be only one residence;

"3.  A residence cannot be lost until another one is gained;

"4.  The residence can only be changed by the union of act and intent;

"5.  A married person shall have the right to retain his or her legal residence in the state of California, notwithstanding the legal residence or domicile of his or her spouse.  (Gov. Code, § 244.)"

He stated, further, that a board member "must prove their residence or domicile is located within the County's boundaries," that " '[d]omicile' is a place of physical presence coupled with the intention to make that place one's permanent home," and that a person may have only one domicile at a given time.

He asked Buttner to respond in writing by February 5, 2016, and to provide the following information:

"1.  Evidence that you reside in your elected district and have done so since being elected to office.

"2.  An explanation as to your children's registration at the Santa Clara schools. . . .

"3.  An explanation of how you are able to be a resident of Imperial County while declaring residency in Santa Clara for your children's enrollment."

12

Buttner responded to the letter via her own letter, dated January 31, 2016. Buttner's letter was six pages long, but Finnell did not believe the response was sufficient.[5]

Despite the allegations, the other ICOE board members elected Buttner as President of the Board in 2016.

*The Traffic Stop*

From at least 2016 to 2018, Buttner also served as an elected official on the Imperial County Democratic Central Committee. Buttner received no stipend or benefits for this work. It was purely a volunteer position. The committee met in person twice a month in Calexico. Another member of the committee, Raul Urena, was attending college in Santa Clara, and he and Buttner would often drive together from Santa Clara to Calexico. According to Urena, they would typically stay one to two nights in Calexico, and Buttner would stay with her parents at the Rockwood Apartment. However, on approximately 10 to 15 separate occasions, Urena either flew down to Calexico or back to Santa Clara, because Buttner spent more time in Calexico than his schedule allowed.

Buttner was driving Stampolis's van on one such trip on the evening of March 10, 2016. Urena was in the passenger seat. At approximately 10:00 p.m., a California Highway officer pulled the van over, while heading south on the 101 freeway, away from Santa Clara towards Calexico. Buttner gave

---

5      As with Porter's response, the trial court declined to let Finnell discuss Buttner's response in any detail and refused to admit the response into evidence. Buttner cited Elections Code section 349, subdivision (c) in the response, and pointed out that a person may have more than one residence. Although she asserts, more generally, that the trial court was inconsistent in its evidentiary rulings, Buttner does not contend that the court erred by excluding her response on appeal.

the officer her driver's license and the registration for the vehicle (which belonged to Stampolis). Buttner received a verbal warning regarding a broken taillight and a citation for violation of Vehicle Code section 14600, which requires drivers to notify the DMV within 10 days of moving to a new residence. The officer who wrote the citation did not testify at trial, but told an investigator that he did not have any independent recollection of the stop beyond what was written on the citation itself.

Buttner did not appear in court to contest the ticket. However, on June 8, 2017, she wrote a letter to the court asking the Traffic Commissioner to set-aside her conviction. Buttner explained that the officer on the stop had asked her why she had a Calexico address on her license when she was present in Santa Clara County, and she told the officer she attended classes in Santa Clara but maintained her domicile in Calexico. Buttner wrote, "I continue to allege that I am not required to change my driver's license address to a temporary address I use while attending school away from my domicile." She asserted, further, that she did not receive any notice or communication regarding the citation at the Rockwood Apartment, which was her domicile address.

*The 2017 Election*

Buttner and Stampolis signed a lease agreement for a new apartment, on Granada Avenue, in Santa Clara, from July 2016 to July 2017. They later renewed the lease for another year, from July 2017 to July 2018, and, again, both Buttner and Stampolis signed the renewal contract.

Meanwhile, in 2017, Buttner ran for re-election of her position on the ICOE Board. Buttner filed a Form 501, Candidate Intention Statement with the Registrar of Voters on July 25th, 2017. The former Registrar of Voters for Imperial County explained that the form is required for candidates to

14

accept money for their political campaigns but is not used to verify residency, or, as the statute requires, domicile. Buttner listed the Rockwood Apartment as her "street address" on the form. She signed the form under penalty of perjury, certifying that "the foregoing is true and correct." This document formed the basis for the charge of perjury by declaration in Count 1 of the operative amended complaint.

That same day, Buttner filed a Declaration of Candidacy form, declaring herself a candidate for the Imperial County Board of Education, Trustee Area One. She listed her "Residence Address" as the Rockwood Apartment and signed the document, confirming that she was "a registered voter residing in the above named trustee area." The form contained an "OATH OF ALLEGIANCE" below the declaration, which Buttner also signed, but did not contain any statements indicating either signature was under penalty of perjury. This document formed the basis of Count 2, filing a false declaration of candidacy.

Buttner submitted a check for $300 along with her Candidate Intention Statement. The check was returned based on insufficient funds. The Registrar of Voters sent a certified letter to Buttner at the Rockwood Apartment informing her that the check was returned. The letter was returned to the Registrar of Voters on August 18, 2017 as "unclaimed." The Registrar of Voters mailed a ballot to Buttner at the Rockwood Apartment address for the November 2017 election. The ballot was also returned as undeliverable on December 28, 2017. As a result, the Registrar of Voters changed Buttner's voter registration to "inactive."

Buttner was re-elected to her position on the ICOE Board for Trustee Area One on November 7, 2017.

15

Just one week later, on November 15, 2017, Buttner submitted a form DL 44 application to renew her driver's license. She listed the Rockwood Apartment as her "residence address." The form indicated the "residence address" is "*where you live,*" in contrast to a "mailing address," which is "*where you receive mail.*" (Capitalization omitted.) Buttner signed the form under a statement that read, "I certify that I have read, understand and agree with the contents of this form. I acknowledge that I have received a copy of the declarations and certification statements pertaining to the issuance of a driver's license or identification card. I certify (or declare) under penalty of perjury under the laws of the state of California that the foregoing is true and correct." This document formed the basis of Count 4, perjury by declaration.

On April 5, 2018, Buttner went to the Registrar of Voters office and asked to have her name removed from the inactive list. She submitted a handwritten note that read: "Please remove inactive status from my domicile. I have not changed domiciles, and any postal return was in error." She signed the note and wrote the address for the Rockwood Apartment below her signature. The Registrar of Voters activated her registration in Calexico at that time.

On August 1, 2018, Buttner signed a Residency Declaration for her daughter, Lenise, in Santa Clara. She listed the Granada Avenue apartment as her "Current Street Address" and the Kiely Boulevard apartment as her last previous address. The document stated: "My student resides with me full time (or legally mandated residency of 50% or more) at the address listed above, which is my full time primary residence. I agree to notify the District, within 15 calendar days, if the student or I, move." Buttner signed the document under penalty of perjury. Buttner filed a similar form the next

16

year, after she was charged, and, on that form, she crossed out the words "full time, primary residence."

On September 10, 2018, several investigators from the district attorney's office set out to ascertain where Buttner would be traveling to following an ICOE Board meeting. Supervising district attorney investigator, Carl Armstrong explained, "[a]fter the Board meeting, [Buttner] was picked up by a white Nissan and then she traveled to the City of Calexico, and then she traveled to the City of El Centro and then subsequently northbound on Highway 86 out of Westmorland." The investigators followed the car long enough to determine Buttner was leaving town that same evening.

On November 30, 2018, Buttner filed a form with the postal service changing her mailing address from the apartment on Granada Avenue in Santa Clara to the P.O. Box in Santa Clara.

Buttner did not testify at trial.

## II. *Instructions and Closing Arguments*

As we discuss in more detail below, the parties had extensive discussions throughout the trial about instructions to the jury as to the meaning of the words "residence" and "domicile." The trial court instructed the jury, in part, that "[r]esident means domicile," and, "[a]t any given time, a person may have only one domicile." Defense counsel argued strenuously to restrict that definition to the context of voting and elections, and to also instruct the jury that, in other contexts, "residence" can mean "a place where a person's habitation is fixed for some period of time, but where she does not have the intention of remaining," and, under this definition, a person may have more than one residence. The trial court refused to give these additional instructions, but did instruct the jury that a person does not lose their domicile by going to another place "for temporary purposes."

17

During closing arguments, the prosecutor told the jury: " 'The domicile of a person is that place where a person's habitation is fixed.' What does that mean? It simply means habitation. It's where the person is living, that's it. Okay? And 'fixed' means for a time. Right? So where is the person living." He then asserted the evidence proved Buttner established her residence, and thus her domicile, in Santa Clara, because "[h]er habitation or where she was living was fixed when she moved [to Santa Clara]." And, he argued, further, "she legally enrolled her kids in school there because that's where she was living."

In response, defense counsel asserted Buttner did not have the intent necessary to commit any of the alleged crimes because she always believed her domicile remained in Calexico.[6] She argued the evidence showed Buttner was "doing her job and her life in Calexico, representing the people, going to her meetings, doing work," and had consistently maintained her domicile in Calexico. And, although the court had refused to so instruct the jury, she told them that the law was complicated, that "residence" did not always mean "domicile," and that a person could have more than one residence at a given time. Finally, she told the jury it did not need to determine Buttner's actual residence or domicile, and only needed to decide what Buttner believed when she signed the various forms.

III. *Verdict and Sentencing*

The jury found Buttner guilty on all charges. The trial court sentenced her to a combined sentence of four years, with three years to be served in

---

[6] We set forth the elements of the asserted causes of action in more detail *post*, but note here that the parties agree, and the jury was instructed, that perjury and theft by false pretenses are specific intent crimes, and the false declaration of candidacy charge required that Buttner knowingly included a false statement on the form.

county prison and one year to be served under mandatory probation. In addition, the court ordered that Buttner pay $39,800.94 in restitution to the ICOE, for compensation received during her second term, and $124,499.07 in restitution to the Imperial County School Voluntary Employee Benefit Association (ICSVEBA), for medical benefits received during the same period.

## DISCUSSION

### I. *The Trial Court Erred by Providing an Incomplete Instruction as to the Meaning of the Key Terms "Residence" and "Domicile"*

Buttner raises a multitude of alleged errors on appeal, but her primary contention is that the trial court failed to adequately instruct the jury as to the nuances surrounding the legal definitions of "residence" and "domicile." She contends the omitted instructions were critical because her primary defense was that she did not have the requisite mens rea for the alleged crimes and, instead, always believed based on her own review of the law that she could legally maintain her domicile in Calexico despite having a temporary residence in Santa Clara. As we explain, we agree that the trial court's instructions left out key provisions of the statutory law relevant to the legal meaning of the terms, particularly the variable meaning of the term "residence" in different contexts. And because the legal meaning of those terms was fundamental to both the charges and Buttner's defense, the error requires reversal of all four counts.

#### A. *Standard of Review*

We consider de novo whether the trial court's jury instructions correctly stated the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) " 'In deciding whether an instruction is erroneous, we ascertain at the threshold what the relevant law provides. We next determine what meaning the charge conveys in this regard. Here the question is, how would a reasonable juror understand the instruction. [Citation.] In addressing this question, we

19

consider the specific language under challenge and, if necessary, the charge in its entirety.  [Citation.]  Finally, we determine whether the instruction, so understood, states the applicable law correctly.' " (*People v. Pearson* (2013) 56 Cal.4th 393, 476.)  " 'The test is whether there is a "reasonable likelihood that the jury . . . understood the charge," in a manner that violated defendant's rights.' " (*Ibid.*)

Although we view the evidence in the light most favorable to the verdict when considering the sufficiency of the evidence, "in determining whether or not the instructions given are correct, we must assume that the jury might have believed the evidence upon which the instruction favorable to the losing party was predicated, and that if the correct instruction had been given upon that subject the jury might have rendered a verdict in favor of the losing party.' " (*Henderson, supra*, 12 Cal.3d at p. 674; accord *Strouse v. Webcor Construction, L.P.* (2019) 34 Cal.App.5th 703, 713.)

*B. Legal Definitions of Residence and Domicile*

We begin with the threshold question of what the law provides.  As our high court has long recognized, "[r]esidence, as used in the law, is a most elusive and indefinite term.  It has been variously defined, and means one thing under [one set of] laws, another under [a different set of] laws, and still another under [a third set of] laws." (*Briggs v. Superior Court of Alameda County* (1947) 81 Cal.App.2d 240, 245.)

"Courts and legal writers usually distinguish 'domicile' and 'residence,' so that 'domicile' is the one location with which for legal purposes a person is considered to have the most settled and permanent connection, the place where [s]he intends to remain and to which, whenever [s]he is absent, [s]he has the intention of returning, but which the law may also assign to [her] constructively; whereas 'residence' connotes any factual place of abode of

some permanency, more than a mere temporary sojourn. 'Domicile' normally is the more comprehensive term, in that it includes both the *act* of residence and an *intention* to remain; a person may have only one domicile at a given time, but [s]he may have more than one physical residence separate from [her] domicile, and at the same time. [Citations.] But statutes do not always make this distinction in the employment of those words. They frequently use 'residence' and 'resident' in the legal meaning of 'domicile' and 'domiciliary,' and at other times in the meaning of factual residence or in still other shades of meaning." (*Smith v. Smith* (1955) 45 Cal.2d 235, 239 (*Smith*); accord *Estate of El Wardani* (2022) 82 Cal.App.5th 870, 883 [discussing *Smith*]; *Whittell v. Franchise Tax Bd.* (1964) 231 Cal.App.2d 278, 284 (*Whittell*) ["While a person can have in law only one domicile [citation], he may have several 'residences' for different purposes"]; *Martinez v. Bynum* (1983) 461 U.S. 321, 338 ["A difference between the concepts of residence and domicile has long been recognized"].)

Thus, while the meaning of domicile is relatively fixed, it is "well settled that 'residence' is a term of varying import and its statutory meaning depends on the context and the purpose of the statute in which it is used." (*Whittell, supra*, 231 Cal.App.2d at p. 284; see also *DeMiglio v. Mashore* (1992) 4 Cal.App.4th 1260, 1268 [describing domicile as a fixed place of residence, requiring a union of physical presence and intent to remain indefinitely]; *In re Marriage of Tucker* (1991) 226 Cal.App.3d 1249, 1258–1259 (*Tucker*) ["In order to establish a new domicile, a person must show ' "(1) physical presence at the new location with (2) an intention to remain there indefinitely" ' "].) Before turning to the instruction proffered by the trial court, we therefore consider the context in which "residence" is used in the various statutes at issue here.

21

## 1. *Statutes Addressing "Residence" for Purposes of Voting and Elections*

As noted, the prosecution's theory of the case was that Buttner provided a false address to meet the residency requirement for an elected position on the ICOE board. The People asserted, in Count 1, that Buttner perjured herself by providing a false address on a Candidate Intention Statement, which she signed under penalty of perjury on July 25, 2017. Likewise, they asserted, in Count 2, that Buttner provided a false address on a Declaration of Candidacy form submitted that same day. And, in Count 3, the People argued that Buttner committed grand theft by accepting money and benefits after qualifying for the election because of these same alleged misrepresentations. We therefore begin with statutes defining residency in the context of county board of education elections.

The provisions of the Elections Code, and other related statutes, governing such elections, generally adopt definitions of "resident" or "residence" that are consistent with the traditional meaning of "domicile." (See *Walters v. Weed* (1988) 45 Cal.3d 1, 7−8.) Doing so ensures all individuals have a single place to vote, and that they are not disqualified from voting in one place until a new one is acquired. (*Ibid.* ["To [e]nsure that everyone has a domicile at any given time, the statutes adopt the rule that a domicile is not lost until a new one is acquired"].)

Of relevance here, Education Code section 1000, subdivision (a), sets forth the requirements to be elected to a county board of education, and provides, in relevant part, "[e]ach member of the board shall be an *elector of the trustee area that the member represents*, and shall be elected by the electors of the trustee area." (Italics added.) A qualified "elector" is someone who meets the voting requirements for age, residency, and registration and has the present right to vote in an election. (Black's Law Dict. (11th ed.

22

2019) p. 656, col. 1.)  Elections Code section 321, subdivision (a) defines an " '[e]lector' " as "a person who is a United States citizen 18 years of age or older and, except as specified in subdivision (b), *is a resident of an election precinct* in this state on or before the day of an election."  (Italics added; see also *Id.*, subd. (b) [setting forth an exception for members of the military and other similar government-based professions].)

Elections Code section 349, in turn, defines "residence" and provides, in full:

> "(a) 'Residence' *for voting purposes* means a person's domicile.
>
> "(b) The domicile of a person is that place in which his or her habitation is fixed, wherein the person has the intention of remaining, and to which, whenever he or she is absent, the person has the intention of returning.  At a given time, a person may have only one domicile.
>
> "(c) *The residence of a person is that place in which the person's habitation is fixed for some period of time, but wherein he or she does not have the intention of remaining. At a given time, a person may have more than one residence.*"  (Italics added.)

Construing these statutes together, Buttner had to be an "elector" of her district to qualify as a candidate.  (Ed. Code, § 1000, subd. (a).)  Because the term "elector" refers to voting eligibility and requires residence in the district (Elec. Code, § 321, subd. (a)), the definition of residence "for voting purposes" also applied to Buttner's qualification as a candidate.  (Elec. Code, § 349, subd. (a).)  For voting purposes, "residence" means "domicile."  (*Ibid.*)  Accordingly, Buttner had to establish that she was *domiciled* within Trustee Area One to qualify as a candidate for the ICOE Board for that district.

But, as Elections Code section 349, subdivision (c) suggests, residence does not *always* mean domicile, and, in some contexts, a person can have more than one residence. Division 2, Chapter 1, Article 2 of the Elections Code, titled "Determination of Residence and Domicile," provides additional guidance, and further distinguishes the two terms. Section 2021 clarifies that a person does not lose their domicile, or gain a new one, by leaving their home "for temporary purposes merely, with the intention of returning," or "without the intention of making [that place their] home." (Elec. Code, § 2021.) Section 2025 explains, further, that "[a] person does not gain or lose a domicile solely by reason of his or her presence or absence from a place while employed in the service of the United States or of this state, nor while engaged in navigation, *nor while a student of any institution of learning*," but that a student can change their domicile and qualify as an elector in a new place *if* the student has abandoned her previous domicile. (Elec. Code, § 2025, italics added.) Finally, section 2026 clarifies that members of Congress are presumed to maintain their domicile at the place where they initially registered, despite establishing "another residence," and, among other things, enrolling their children in school at that new residence, where they work. (Elec. Code, § 2026.)

2. *Statutes Addressing "Residence" for Purposes of Compulsory Education*

We turn next to Title 2 of the Education Code, which addresses the residency requirement for the enrollment of children in public schools for elementary and secondary education. There were no charges stemming from Buttner's enrollment of her children in public school in Santa Clara, but it was nevertheless an important part of the prosecution's case. The People submitted evidence, including certified records from the Santa Clara Unified School District, that Buttner had established "residency" in Santa Clara to

enroll her children there, and asserted that Buttner must have lied either on the school residency forms in Santa Clara or the candidacy forms in Calexico.

With some limited exceptions, Education Code section 48200 mandates compulsory full-time education for children between the ages of 6 and 18, and specifies that all such children "shall attend the public full-time day school . . . of the school district in which the *residenc*[*y*] of either the parent or legal guardian is located." (*Ibid.*, italics added; see also *Katz v. Los Gatos-Saratoga Joint Union High School Dist.* (2004) 117 Cal.App.4th 47, 57 (*Katz*) ["Section 48200 embodies the general rule that parental residence dictates a pupil's proper school district"].) This is the portion of the Education Code that Finnell referenced during his testimony at trial when discussing the residency requirements for children to attend public schools and, specifically, the documents Buttner had to submit to verify residency for her children to attend school in Santa Clara.

Notably, the Education Code does not define "residency" in this context. (See *Katz, supra*, 117 Cal.App.4th at pp. 63, 66 [finding the term ambiguous and concluding the case did not require the court "to interpret the word 'residence' as used in the statute or to consider whether it means the same thing as domicile, dwelling, abode, or habitation"]; Ed. Code, § 68062 [defining residence specifically for the purpose of post-secondary (college) education and tuition].) However, Education Code section 48204 provides several exceptions to the general rule set forth in section 48200, including that a child may attend a school if the child "*lives in the home* of a caregiving adult that is located within the boundaries of that school district." (Ed. Code, § 45204, subd. (a)(5), italics added; see *Katz, supra*, at p. 58 ["The section as a whole thus embodies exceptions to the general rule of parental residence as the determinant of school district enrollment"].) Further, Education Code

25

section 48204.1 sets forth the types of documentation that qualify as "evidence that the pupil meets the residency requirements for school attendance." It provides, "[r]easonable evidence of residency for a pupil living with his or her parent . . . shall be established by documentation showing the name and address of the parent . . . including, but not limited to . . . [a r]ental property contract, lease or payment receipts [or a u]tility service contract, statement or payment receipts." (Ed. Code, § 48204.1.)

Thus, there is at least some indication the Legislature intended residence, in the context of compulsory public education, to mean, simply, where the child is currently living, and not necessarily where their parents or guardians maintain their domicile. This makes sense because, logistically, children need to go to school in the place where they are presently located. If a parent were to take a temporary job assignment in another city, for example, they may need to enroll their children in the local school in that location, during the time they are living there. As noted, the Elections Code expressly allows members of Congress to maintain their original domicile despite enrolling their children in school at a second residence, presumably, where they live while in session. (See Elec. Code, § 2026, subd. (a).)

3. *Statutes Addressing "Residence" for Purposes of Obtaining a Driver's License*

Finally, because the People alleged in Count 4 that Buttner provided a false address on a driver's license renewal application, we consider the Vehicle Code provisions governing such applications.

Vehicle Code section 12800 governs applications for an original or renewal of a driver's license. It requires that the applicant provide their "true" "mailing address" and "residence address" but, like the Education Code, the Vehicle Code does not define "residence" in this context. (*Ibid.*; see also Veh. Code, § 12800.7, subd. (a) ["Upon application for an original,

26

renewal, or duplicate of a driver's license the department may require the applicant to produce any identification that it determines is necessary in order to ensure that the name of the applicant stated in the application is their true, full name and that their residence address as set forth in the application is their true residence address"].)

Vehicle Code section 516 defines " 'Resident' " as "any person who manifests an intent to live or be located in this state on more than a temporary or transient basis," and provides, further, that "[p]resence in the state for six months or more in any 12-month period gives rise to a rebuttable presumption of residency."  It then goes on to list types of evidence for proving residence for the purpose of vehicle registration.  (*Ibid.*)  The list includes both items indicative of domicile, such as an "[a]ddress where registered to vote," as well as items more generally associated with residence, such as "[r]enting or leasing a home for use as a residence" and "[a]ttendance of dependents at a primary or secondary school."  (*Ibid.*)

Vehicle Code section 12505, in Chapter 1, Article 1, governs persons required to obtain a California driver's license, and provides, "[f]or purposes of this division only and notwithstanding Section 516, residency shall be determined as a person's state of domicile."  This definition does not govern the application process though, and, instead, relates primarily to whether an individual is sufficiently established as a resident of the state, such that the law requires them to obtain a California driver's license or vehicle registration in the first instance.

4. *Summary of Legal Principles Derived from the Foregoing Statutes*

From our review of the relevant statutes, we ascertain the following legal principles relevant to the case at hand:

27

In the context of determining a person's residence for the purpose of registering to vote, or running for certain elected positions, residence means domicile, a place in which a person's habitation is fixed, wherein she has the intention of remaining, and to which, whenever she is absent, she has the intention of returning. At any given time, a person may have only one domicile, and a person does not lose their domicile, or gain a new one, by going to another place for a temporary purpose. However, residence does not always mean domicile. Residence can also mean a place in which a person's habitation is fixed for some shorter period, but wherein she does *not* have the intention of remaining indefinitely. At any given time, a person may have more than one residence for various purposes other than voting or running for office.

The Education Code requires that a child attend school in the school district in which the residency of either the parent or legal guardian is located, but it does not define residence, or suggest that residence means domicile. Rather, there is at least some indication that the Legislature intended to use "residence" in the broader, more ordinary meaning of the term. Likewise, the Vehicle Code requires persons to state their true "residence address" when applying for or renewing a driver's license, but also does not define "residence" specifically in that context.

C. *The Trial Court's Instructions on the Meaning of "Residence" and "Domicile" Were Erroneously Incomplete*

With these general principles in mind, we now turn to the instructions the trial court provided to the jury.

In its preliminary instructions, the trial court told the jury, "[s]ome words and phrases that may be used during the trial have legal meanings that are different from their meanings in everyday use. These words and

28

phrases will be specifically defined in the instructions.  Please be sure to listen carefully and follow the definitions that I gave [*sic*] you."

The parties then had extensive discussions throughout the trial about how to instruct the jury on the legal meaning of the terms "residence" and "domicile."  The defense sought to include the language from Elections Code section 349, defining both terms, in its entirety, without modification, and including subdivision (c) defining "residence" and stating that a person may have more than one residence at a time.  The prosecutor proposed two separate, but related instructions, both focused primarily on the meaning of "domicile."

"People's Special Instruction #4" stated:  " 'Residence' for purposes of Education Code section 35107[7] means 'domicile,' a place of physical presence coupled with an intention to make that place one's permanent home; a person may only have one domicile at any given time."  "People's Special Instruction #5" included language from Education Code section 1000, subdivision (a) and Elections Code section 321, requiring that each county board of education member be an "elector" and defining the term; and then similarly stated:  " 'Residence' for purposes of Education Code section 1000 means 'domicile,' a place of physical presence coupled with an intention to make that place one's permanent home; a person may only have one domicile at any given time."

The court began with the prosecutor's first proposal and suggested replacing " 'for purposes of Education Code [section] 35107' " with " 'for

_____

7       Education Code section 35107, subdivision (a), sets forth the qualifications for members of the governing board of a school district.  The parties later agreed that Education Code section 1000, as opposed to section 35107, applies here, as it sets forth the qualifications for members of a county board of education, like the ICOE.

purposes of this instruction.' " Defense counsel indicated she would prefer her own, more complete version of the instruction, based on Elections Code section 349. The court initially said it did not have an issue with the more detailed instruction, but then said it did not believe subdivision (c) was necessary. Defense counsel stated, "But that's part of the law," and the court responded, "I think that your other instructions conflict with that." Turning to defense counsel's proposed instruction, the court reiterated that its tentative was to instruct the jury with the language from Elections Code section 349, subdivisions (a) and (b), but not (c). Defense counsel argued, "So we're cutting out the part that she relied on in deciding whether or not she[ ] was properly domiciled. It's (a), (b) and (c), and that's the entire law." The trial court indicated it understood the objection and would make a final decision.

The court then turned to a proposed defense instruction based on Elections Code section 2021, clarifying that a person does not gain or lose a domicile by going into another precinct for temporary purposes. The court explained, "I think this applies. I think she's saying that she has a domicile or she has a residence and then implies it's temporary. Now, there's conflicting evidence, and the evidence goes both ways, *but clearly there's enough evidence to support this instruction*." (Italics added.) The court then noted "People's Special Instruction [#]5" was "the more complete instruction." Defense counsel continued to object and request that the court instruct the jury with the full language of Elections Code section 349. The trial court said it would "try to make a decision as to how to harmonize both requests."

The trial court proposed its own instruction in the next set of proposed instructions. Like "People's Special Instruction #5," the court's proposal included language from Education Code 1000, subdivision (a), the definition

30

of "elector" from Elections Code section 321, and the language from Elections Code section 349, subdivisions (a) and (b), but not (c). In response, defense counsel argued, "[I]t's important to note, though, that the law . . . states you can only have one domicile, but you can have multiple residences." She explained further, "[I]t goes to her intent as to what she was thinking at the time, right, and based on what she read in the law. So that's why these instructions are so important. . . . [W]e are not deciding what her residence was or what her domicile was. We're deciding what her intent was, and so that's why we need to have an additional one that you can have multiple residences." During the next round of discussions, the court characterized the issue as "whether or not for purposes of being elected Ms. Buttner is or is not a resident of the area." Defense counsel insisted, to the contrary, that the issue "was her specific intent – or her general intent when she signs those documents." She continued, "[Y]ou can have multiple residences and that's what she was relying on when she was residing in Santa Clara." She asserted, "[T]his is a correct statement of the law" and the court is "excluding the part that really helps my client."

In the last round of discussion, the trial court combined its previously proposed instruction with another previously proposed instruction on the elements of Count 2, providing a false declaration of candidacy. The court also omitted the "for purposes of this instruction" language from the definition of "residence." It said it did so because the term residence "means what it means throughout the case," and—even though it had just

incorporated the definition into the instruction only on count 2—explained the definition of "residence" was applicable to at least counts 1, 2 and 3.[8]

Ultimately, the trial court instructed the jury as follows:

> "The Defendant is charged in Count 2 of having committed the crime of False Declaration of Candidacy in violation of Section 18203 of the California Elections Code.
>
> "It is alleged that the defendant made the following false statements:
>
> "Count 2:  By stating on July 25th, 2017, on her Declaration of Candidacy form (Exhibit #12) that she, Annette Buttner, resided at 1620 Rockwood Avenue, Apartment 6, Calexico, California, 92231.
>
> "Any person who files or submits for filing a nomination paper or Declaration of Candidacy knowing that it or any part of it has been made falsely is guilty of the crime of False Declaration of Candidacy in violation of Elections Code Section 18203.
>
> "In order to prove this crime, each of the following elements must be proved:
>
> "1. The person filed or submitted for filing a nomination paper or Declaration of Candidacy;
>
> "AND
>
> "2. The person knew the statement was false.
>
> "An office becomes vacant upon his or her ceasing to be an inhabitant of the state, or if the office be local and one for which local residence is required by law of the district, county, or city for which the officer was chosen or

---

[8]    As noted in the factual background, Count 4 was based on the driver's license application Buttner submitted in November 2017.  The form itself required both a "mailing address" and a "residence address."

appointed, or within which the duties of his or her office are required to be discharged.

"Each County in California shall have a County Board of Education. Each member of the County Board of Education shall be an elector (registered voter) of the trustee area which he or she represents and shall be elected by the electors (registered voters) of the trustee area. "Elector" means a person who is a United States citizen 18 years of age or older and is a resident of the election precinct in this state on or before the day of an election.

"*Resident [sic] means domicile. The domicile of a person is that place in which his or her habitation is fixed, wherein the person has the intention of remaining, and, to which, whenever he or she is absent, the person has the intention of returning. At a given time, a person may have only one domicile. Domicile may be shown by circumstantial evidence.*

"*A person does not gain or lose a domicile solely by reason of his or her presence or absence from a place while employed in the service of the United States or of this state, nor while engaged in navigation, nor while a student of any institution of learning, nor while kept in an almshouse, asylum or prison.*

"*A person who leaves his or her home to go into another state or precinct in this state for temporary purposes merely, with the intention of returning, does not lose his or her domicile.*

"*A person does not gain a domicile in any precinct into which he or she comes for temporary purposes merely, without the intention of making that precinct his or her home.*" (Italics added.)

We conclude that this instruction was incomplete in at least three key respects. First, the trial court omitted the phrase "for voting purposes" from Elections Code section 349, subdivision (a), thereby suggesting that residence

33

*always* means domicile, and that a person can only have one legal residence for all purposes. As we have explained, that is not the law. For purposes other than voting or running for office, residence does not always mean domicile, and a person may have more than one residence at a time. Second, the trial court omitted the alternate definition of "residence" from Elections Code section 349, subdivision (c) in its entirety, which would have told the jury that residence can also mean a "place in which [a] person's habitation is fixed *for some period of time*, but wherein he or she does not have the intention of remaining." (Italics added.) Third, the trial court failed to provide guidance as to the meaning of "residence" as used in any of the other relevant statutes, thereby reinforcing the suggestion that residence does not have any legal meaning other than domicile.[9]

As a result of these omissions, a reasonable juror reading the instruction in its entirety might believe, incorrectly, that residence and domicile are synonymous for all purposes, and that a person may have only one domicile and, thus, only one legal residence, at any given time. But that is not the law. Rather, as we have explained, and as Elections Code section 349 itself implies, while residence may be defined to mean domicile in certain contexts, in others, residence means something less permanent. (See *Smith, supra*, 45 Cal.2d at p. 239; *Whittell, supra*, 231 Cal.App.2d at p. 284.) Typically, a person can have more than one residence, and does not necessarily lose their domicile by establishing a second, less permanent

---

9      The People argue Buttner forfeited any argument that the trial court failed to provide additional, alternative definitions of "residence" to the jury. But defense counsel did ask for an instruction based on Education Code section 48204, and she repeatedly pointed out that Buttner's defense was based on an understanding that one may have multiple residences but only one domicile. Regardless, we would find prejudicial error based on the omissions of critical language from Education Code section 349 alone.

residence.  (*Whittell*, at p. 284; *Tucker*, 226 Cal.App.3d at p. 1258.)  Elections Code section 349, subdivision (a) states that " '[r]esidence' *for voting purposes* means a person's domicile."  (Italics added.)  It does not state that residence always means domicile, or that a person cannot have more than one residence, as the term is traditionally used.

The People essentially concede the point and acknowledge that the trial court could have provided better guidance as to the meaning of the two terms. They argue, though, that the errors were not prejudicial.  As we explain next, we disagree.

### D. The Error was Prejudicial and Requires Reversal on All Counts

As an initial matter, the parties disagree as to the standard under which we should evaluate whether the error was prejudicial.

Buttner argues the error effectively precluded the jury from considering her defense that she did not have the requisite knowledge or mental state to commit the crimes, and therefore amounted to a due process violation, which requires application of the federal *Chapman* standard of prejudice.  (See *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*); *People v. Larson* (2012) 205 Cal.App.4th 810, 829–830 [an instructional error that removes the mental state element of an alleged offense from the jury's consideration constitutes a due process violation and is subject to the *Chapman* standard of prejudice].)  But, she contends the error requires reversal under any standard.  The People assert Buttner forfeited her due process claim by failing to provide adequate supporting authority, and argue that we should apply the *Watson* standard of prejudice for state-law errors (*People v. Watson* (1956) 46 Cal.2d 818), but likewise contend that the error was harmless regardless of the applicable standard.

We need not decide which standard applies. Instead, we conclude the error requires reversal under either standard. (See *People v. Hendrix* (2022) 13 Cal.5th 933, 940–944 [considering whether erroneous instruction relevant to inadequate mens rea defense was subject to *Chapman* standard of prejudice but ultimately determining the error was prejudicial under either standard].) As we will explain, the record contains substantial evidence from which a rational juror could have determined that Buttner honestly believed she had maintained—or actually did maintain—her domicile at the Rockwood Avenue apartment in Calexico, despite having a second residence in Santa Clara. On this record, there is a reasonable likelihood that at least one juror would have accepted Buttner's defense, had the jury been adequately instructed.

First, there was substantial evidence supporting Buttner's assertion that she believed she had maintained her domicile at the Rockwood Apartment. There was testimony from several witnesses that Buttner and her children lived in Calexico from at least 2010 to 2013, that Buttner's children attended public school in Calexico, and that they moved back to the Rockwood Apartment with Buttner's parents in 2013, before going to Santa Clara. Buttner registered to vote at her parents' apartment in May 2013, and maintained that registration even after going to Santa Clara. From this, the jury could have concluded that Buttner did establish a domicile at the Rockwood Apartment.

From there, the jury had to decide whether Buttner maintained that domicile, despite moving, at least temporarily, to Santa Clara. This was the primary fact dispute in the case, and, as the trial court itself seems to have acknowledged, there was evidence to support either conclusion. Buttner's daughters testified that they initially went up to Santa Clara for the summer

and stayed, as guests, at Stampolis' apartment. Although they eventually enrolled in school there, Buttner's older son, Christian stayed in Calexico, at the Rockwood Apartment. Buttner visited Christian and her parents regularly and continued to work and volunteer in Calexico. She attended the majority of the ICOE board meetings, in person in Calexico, and served on a volunteer board for the Imperial County Democratic Central Committee, which also met regularly in Calexico. There was at least some credible evidence that she would often stay for days, or even a week, at a time in Calexico. And, Buttner continued to maintain a room at the Rockwood Apartment with her furniture and personal belongings.

In addition, there was ample evidence that Buttner had studied the law and *believed* that she remained legally domiciled in Calexico. During her interview with the investigator in Santa Clara, Buttner explained that she had gone to Santa Clara for a temporary job, and because the schools were better there, for both her and her children. But she said that her life was still in Calexico and she believed her domicile remained in Calexico. She referenced statutory codes, and specifically stated that she did not lose her domicile by going somewhere else for temporary purposes, such as school or work. Another district attorney investigator testified that Buttner was "consistent throughout this entire investigation saying that she believes her domicile is in Calexico." And, although the trial court refused to admit the written responses into evidence, there was testimony that both Buttner and Porter responded to inquiries about Buttner's residency by citing related caselaw and statutory codes.

Importantly, Buttner never denied that she had established a second *residence* in Santa Clara, nor could she. She signed a lease in Santa Clara and submitted proof of *residency* to the Santa Clara Unified School District.

37

Rather, Buttner argued that she believed she could do so while legally maintaining her *domicile* in Calexico. Defense counsel told the jury, "What you are supposed to determine at this time is . . . *what she thought when she signed those documents*, what was her specific intent, what did she believe." (Italics added.) She argued, further, that Buttner believed she was "merely *residing* in Santa Clara while she's going to school and while she had that temporary job." (Italics added.)

But while defense counsel understood that residence does not always mean domicile, the jury did not. Rather, the court instructed the jury, without qualification, that "[r]esident [*sic*] means domicile" and a person may have only one domicile at a time. And it refused to provide the additional language from Elections Code section 349, subdivision (c), which would have told the jury that residence can also mean a "place in which [a] person's habitation is fixed *for some period of time*, but wherein he or she does not have the intention of remaining," (italics added) and, under that definition, that a person may have more than one residence. If the court had provided this additional language to the jurors, they may have concluded that Buttner at least believed that she had maintained her domicile in Calexico. Absent the additional instructions, though, the jury was simply left to conclude that by admittedly *residing* in Santa Clara and establishing *residency* for her children to attend school there, Buttner lost her *domicile* in Calexico.

We acknowledge that the court did instruct the jury that a person does not gain a new domicile, or lose their previous domicile, by going to another state or precinct for "temporary purposes merely, with the intention of returning," and "without the intention of making that [new] precinct his or her home." (See Elec. Code, § 2021.) But, when read in context, the instruction implied, as the prosecutor asserted, that temporary meant

38

something more akin to a hotel stay, and that Buttner could not maintain a second home, or *residence*, in Santa Clara, without losing her domicile in Calexico. Thus, it was not sufficient to cure the omission of the additional language from Elections Code section 349.

Second, the prejudicial nature of the error was compounded by the prosecution's arguments to the jury, and by the fact that the court allowed evidence and argument supporting the inaccurate instruction, while omitting evidence to the contrary. Buttner asserts her due process rights were violated by these additional errors. Although we need not, and expressly do not, find reversible error based on these additional assertions, we do agree with Buttner that the testimony and argument likely contributed to the jury's incomplete understanding of the law surrounding "residence" and "domicile."

Finnell testified that the "residency" requirement for public school enrollment would be the same in Santa Clara and Imperial County. He explained that a child needs to be a "resident" of the district in which they are going to school, pursuant to Education Code section 48200, and that schools typically verify residency through paperwork sent to the parents. Defense counsel tried to clarify whether residency for the purpose of compulsory education was the same as domicile, but the court sustained an objection that the question called for a legal conclusion. When defense counsel pointed out that Finnell had already testified as to his interpretation of the law, the court stated, in the presence of the jury, "the Court will ultimately instruct the jury as to what domicile is or is not."

Similarly, when defense counsel tried to ask Porter about her response to Greg Harris's e-mail, in which she said she believed Buttner was properly domiciled in Calexico, the court sustained an objection that it called for a legal conclusion. The trial court then allowed Porter to testify that an

39

individual may have only one domicile for the purpose of voting or being elected, over the prosecutor's objections, but sustained the very same objections when defense counsel asked if a person could have more than one residence. Defense counsel tried to clarify through hypotheticals, and the court continued to sustain objections. Eventually, the court asked if defense counsel wanted to qualify Porter as an expert, and, after doing so, allowed Porter to testify that there is no limit on the number of residences a person may have.

Later, Finnell testified that he used the terms "residency" or "primary residence" and "domicile" interchangeably. Defense counsel tried to clarify once again and asked whether a parent that had two residences could legally enroll their child in school for six months of the year in each location, but the court again sustained an objection. Thus, throughout the trial, the court allowed testimony conflating the terms residence and domicile, while frequently precluding defense counsel from clarifying.

The prosecutor then relied on the trial court's incomplete instruction and the foregoing testimony during closing arguments to assert that Buttner could not have maintained her domicile in Calexico merely because she was *living* in Santa Clara. Thus, "the instruction created an ambiguity which the trial court expressly allowed to be exploited by the prosecutor," thereby increasing the likelihood that the jury relied on an incomplete understanding of the key terms in reaching its verdict. (*People v. Hayes* (2009) 171 Cal.App.4th 549; 557 *People v. Lee* (1987) 43 Cal.3d 666, 677 [finding closing arguments relevant in assessing prejudice from instructional error].)

The prosecutor referred to the instruction on "domicile" at the outset of his argument and told the jury: "[I]t's not confusing, it's clear;" "It simply means habitation. It's where the person is living, that's it." He continued:

40

"Their defense, if you believe that she was really living with her parents this whole time, then that means she lied in Santa Clara . . . ¶ Now, do I think that happened?  No. . . .  I think she *legally enrolled her kids in school because that's where she was living.  She established residency there.  That's where her domicile was, in Santa Clara.*"  (Italics added.)  He reiterated the same point later, stating:  "She said she keeps her domicile.  Listen to that word.  Well, a domicile is not something you keep.  It's where you live.  You can't just have something on paper and say you live on a piece of paper.  You can't do it."  And he suggested that going into another precinct for a temporary purpose would not include a second residence.  He told the jury, if someone "goes and stays at a hotel for a few weeks for work and goes home to another place where they live, where they have a lease and do all that, that's their domicile.  It's not the hotel that they are staying at, it's not their parents' house."

The argument implied that residency and domicile are the same, for all purposes and, more specifically, that it was not possible for Buttner to establish residency in Santa Clara while maintaining her domicile in Calexico.  As we have explained, the law does not preclude a person from having more than one residence for purposes other than voting or running for office, but the incomplete instruction would have led a reasonable jury to believe that it does.  And, since there was evidence Buttner researched the law, a reasonable juror would further be compelled to conclude that she could not have *believed* that the law allowed her to establish a residence in Santa Clara while also maintaining her domicile in Calexico.

Without a complete understanding of the law that Buttner claimed to have read and relied on, the jury could not adequately evaluate her defense.  Or, as defense counsel put it:  "[T]o deny her this instruction . . . that you can

41

only have one domicile but multiple residences, which is her defense, would be to deny her [a] defense in this case." And because that same defense applied to all asserted counts, the error requires reversal of all four counts.

## II. *Substantial Evidence Supports the Convictions*

Buttner also asserts the evidence was insufficient to support the convictions as to each of the four counts. "Although reversal is required based on the instructional errors alone, we nevertheless consider [the] insufficiency of the evidence argument to determine whether retrial is barred by double jeopardy principles." (*People v. Wetle* (2019) 43 Cal.App.5th 375, 388 (*Wetle*), citing *United States v. DiFrancesco* (1980) 449 U.S. 117, 131.)

An appellant challenging the sufficiency of the evidence "bears an enormous burden." (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.) "In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) We do not reweigh the evidence or reevaluate the credibility of witnesses and need not determine whether the evidence proves guilt beyond a reasonable doubt. (*People v. Jennings* (2010) 50 Cal.4th 616, 638.) We presume the existence of every fact in support of the judgment the jury reasonably could deduce from the evidence. (*Id.* at pp. 638-639.) If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. (*Id.* at p. 639.)

A. *Perjury, Counts 1 and 4*

The jury found Buttner guilty of two counts of perjury; one based on the Form 501, Candidate Intention Statement Buttner filed with the Registrar of Voters on July 25th, 2017 (Count 1), and one based on the DL 44 application to renew a driver's license Buttner submitted to the DMV on November 15, 2017 (Count 4).

Perjury is a specific intent crime. (*People v. Post* (2001) 94 Cal.App.4th 467, 481.) To prove a charge of perjury in violation of Penal Code section 118, the prosecution must present evidence establishing: "(1) a willful statement, (2) the statement was made under oath or affirmation, (3) the statement involved a material matter; and (4) the witness knows the statement is false." (*People v. Lucero* (2019) 41 Cal.App.5th 370, 406.) " '[I]t is not sufficient to support the charge of perjury that the accused swears to a material fact that is false, *the false swearing must be knowingly and wilfully* [*sic*] *done.*' " (*People v. Viniegra* (1982) 130 Cal.App.3d 577, 586 (*Viniegra*), original italics.)

Buttner relies on *People v. Macken* (1939) 32 Cal.App.2d 31 (*Macken*) to assert the perjury convictions are subject to a heightened standard of proof.[10] (*Id.* at p. 35.) She argues the record must contain direct evidence that is " 'absolutely incompatible . . . or physically inconsistent' " with the alleged false claim. (*Ibid.*; accord *Viniegra, supra*, 130 Cal.App.3d at p. 585 [quoting *Macken*].) The People disagree and contend more contemporary cases utilize

---

10    Buttner summarily states this same standard applies to allegations of false declaration of candidacy and grand theft by false pretenses. She cites only one additional case, *People v. Henning* (2009) 173 Cal.App.4th 632, which discusses the elements of theft by false pretenses, but does not address the substantial evidence test or the requisite standard of proof. (See *id.* at pp. 642−643.)

the typical substantial evidence standard of review. (See, e.g., *People v. Mayer* (2003) 108 Cal.App.4th 403, 417; *People v. Laws* (1981) 120 Cal.App.3d 1022, 1028.) Neither is entirely correct. While the substantial evidence test is generally applicable in evaluating the sufficiency of the evidence on appeal, perjury is one instance in which the test is impacted by the Legislature's imposition of additional evidentiary burdens. (See *People v. Cuevas* (1995) 12 Cal.4th 252, 261 (*Cuevas*).) However, the additional burden is not as imposing as Buttner suggests.

The appellant in *Macken*, Juanita Macken, was charged with perjury based on an allegation she made during divorce proceedings, that her husband, Dr. William Macken, and his attorney stole $2,800 in cash from her after breaking into her home to serve her with divorce papers. (*Macken, supra*, 32 Cal.App.2d at p. 33.) On appeal, Juanita asserted there was no direct evidence proving the allegation was false. The court noted that perjury cannot be proven based on the testimony of one witness alone and explained, "this does not mean that it is necessary to produce someone who was present at the defendant's home on the evening of June 16, 1937, to supply direct evidence that Dr. Macken did not steal the money. It is, however, necessary to have positive testimony as to facts that are absolutely incompatible with the innocence of the accused. [Citation.] Positive testimony of a state of facts contrary to that sworn to by the accused or absolutely incompatible or physically inconsistent with her evidence, may be sufficient." (*Id.* at p. 35.)

The court then borrowed an analogy from another case: " 'As we have already suggested, in order that the evidence may be sufficient, there must be positive testimony to a contrary state of facts from that sworn to by the defendant at the previous trial. For instance, to support the charge of perjury as to the alleged false statement of defendant that he met the cow at the time

44

stated upon this particular public highway, it was necessary to produce the positive testimony of one witness at least that such meeting did not take place, as that the defendant was not at that time at that place, or that the cow was not there.' " (*Macken, supra*, 32 Cal.App.2d at p. 36.) At trial, Dr. Macken testified he did not steal the money, his attorney testified he was in the room with him the entire time and did not see him steal the money, and there was evidence Juanita gave the money to a friend for safe keeping a couple of days later. The appellate court concluded that evidence was sufficient to sustain the conviction. (*Ibid.*)

As the People point out, the charges in *Macken* were based on a prior statute, Penal Code section 1103a. (*Macken, supra*, 32 Cal.App.2d at p. 35.) When *Macken* was decided, section 1103a provided, " '[p]erjury must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances.' (Historical Note, 50B West's Ann. Pen. Code (1985 ed.) § 1103a, p. 342.)" (*People v. Alcocer* (1991) 230 Cal.App.3d 406, 412.) The statute was amended in 1969, and, in 1989, it was repealed and replaced by section 118, subdivision (b), which now provides: "No person shall be convicted of perjury where proof of falsity rests solely upon contradiction by testimony of a single person other than the defendant. Proof of falsity may be established by direct or indirect evidence." (Pen. Code, § 188, subd. (b); see also Stats. 1989, ch. 897, § 13 [repealing and replacing section 1103a]; *Alcocer,* at p. 412.)

Thus, it remains the case, as the trial court instructed the jury here, that perjury cannot be proven by one witness alone and, instead, requires corroboration of the alleged falsity. (*People v. Trotter* (1999) 71 Cal.App.4th 436, 439; Pen. Code, § 118, subd. (b).) As our high court has explained, "The Legislature has determined that because of the reliability questions posed by

45

certain categories of evidence, evidence in those categories by itself is insufficient as a matter of law to support a conviction. For example, the Legislature has required that . . . the testimony of a single witness in a perjury case as to the falsity of the defendant's perjurous statement (Pen. Code, § 118, subd. (b)) must be corroborated before a conviction can be based on them." (*Cuevas, supra*, 12 Cal.4th at p. 261.) But, contrary to Buttner's assertion, the prosecution need not rely entirely on direct evidence to prove the alleged falsity. Regardless, here, there was both direct and indirect evidence tending to prove each of the alleged falsities.

### 1. *Substantial Evidence Supports the Conviction on Count 1*

In Count 1, the People alleged Buttner committed perjury by "stating on her Candidate Intention Statement (Exhibit #9) for on July 25, 2017 that her street address was 1620 Rockwood Avenue, Apt. 6, Calexico, CA 92231." Buttner does not dispute that she listed the Rockwood Apartment address on the form, or that she signed the form under penalty of perjury. She also does not dispute that she was living, at least part time, in an apartment in Santa Clara as of July 2017. Instead, she asserts the Candidate Intention Statement was not used to verify residency for the purpose of qualifying her to run for a position on the ICOE board, and, thus, there was no evidence her use of the Rockwood Apartment address as a "street address" was false, or that the alleged falsity was material.

*People v. Hedgecock* (1990) 51 Cal.3d 395 (*Hedgecock*) is instructive. There, the California Supreme Court considered the definition of materiality in the context of perjury by declaration by a political candidate. (*Id.* at p. 404.) The Court explained that traditional definitions of materiality which focus on the impact the statement had on the outcome of the proceedings, are not appropriate in the context of documentary political candidate filings. (*Id.*

46

at p. 405.) Rather, it concluded, "in a perjury prosecution based on a failure to comply with the disclosure provisions of the [Political Reform] Act, an omission or misstatement of fact is material if there is a substantial likelihood that a reasonable person would consider it important in evaluating (1) whether a candidate should be elected to, or retained in, public office, or (2) whether a public official can perform the duties of office free from any bias caused by concern for the financial interests of the official or the official's supporters." (*Id.* at pp. 406–407.)

The underlying charges in *Hedgecock* concerned financial disclosures required by the Political Reform Act, but the definition remains relevant here, where Buttner's residency in the precinct was a qualifying factor for her candidacy and, thus, was important in evaluating whether she could run for or retain her elected position.[11] And, although there was evidence in support of Buttner's defense, there was also sufficient evidence to support the verdict, had the jury been properly instructed.

There was testimony, from multiple witnesses establishing that Buttner did need to reside within Trustee Area One to be eligible to run for the position on the ICOE board. The Candidate Intention Statement indicated, on its face, that it was a California Fair Political Practices

---

[11]    Buttner asserts the trial court erred by failing to instruct the jury as to the meaning of "material." We have already concluded the instructional error regarding the definitions of residence and domicile requires reversal of all four counts, but note that *Hedgecock* does appear to support Buttner's position regarding the instruction on materiality as well. (See *Hedgecock, supra*, 51 Cal.3d at pp. 406–409 ["We merely hold that in a perjury prosecution based on errors or omissions in disclosure statements required by the [Political Reform] Act, materiality is an element of the offense, and must therefore be determined by the jury"].) But, as we discuss, there was evidence from which the jury could reasonably conclude Buttner's use of the Rockwood Apartment address was material.

47

Commission (FFPC) form, and Porter, the former registrar of voters, testified it was one of several forms the FFPC required candidates to have on file. Although she later specified the form was not used for the express purpose of verifying residency, Porter confirmed that an individual would not be able to run for the position if they listed an address that was outside the relevant trustee area on either the Candidate Intention Statement, or the Declaration of Candidacy. And she stated, "All these forms require a domicile."

On the form, under the heading "Candidate Information," Buttner indicated she intended to run for a position as an ICOE Governing Board Member for Trustee Area One, and, in the same section, she listed the Rockwood Apartment address, which was in Trustee Area One, as her "street address." But, just one week later, Buttner listed the Granada Avenue apartment as her "Current Street Address" on a Residency Declaration she submitted to the Santa Clara school district.

Notably, Buttner submitted the Candidate Intention Statement on the same day as her Declaration of Candidacy, which, as we discuss in more detail *post*, did require her to list a "residence address" and to confirm that she was residing in Trustee Area One. And, with just one exception in 2013, in which she used the McKinley Street address, also located in Trustee Area One, Buttner consistently used the Rockwood Apartment address on all the documents relating to her candidacy. Thus, even if the Candidate Intention Statement did not explicitly require a "residence address," the jury could have reasonably concluded that Buttner knew she needed to have a domicile in Trustee Area One to be qualified to run for the position, and knowingly and intentionally listed the Rockwood Apartment address on the Candidate Intention Statement to ensure there would be no questions regarding her residency. (See *People v. Venegas* (1998) 18 Cal.4th 47, 80 ["jurors are

48

permitted to rely on their own common sense and good judgment in evaluating the weight of the evidence presented to them"].)

And, finally, although the jury was not properly instructed on the definitions of residence and domicile, there was evidence from which they could have reasonably determined that Buttner had established a new domicile in Santa Clara by the time she submitted the Candidate Intention Statement. Buttner does not seriously contend otherwise. She had signed multiple leases and enrolled her children in school there and, although she said she planned to return to Calexico at some point, she did not provide a specific timeline, or any specific plans to do so. Accordingly, we conclude there was sufficient evidence to support the conviction on Count 1.

### 2. *Substantial Evidence Supports the Conviction on Count 4*

In Count 4, the People alleged Buttner committed perjury by "stating on her Driver's License Application (Exhibit #37) that her residence address was 1620 Rockwood Avenue, Apt. 6, Calexico, CA 92231."

Again, Buttner does not dispute that she wrote the Rockwood Apartment address on the form under "residence address" or that she signed the form under penalty of perjury. Rather, as with Count 1, she asserts there was insufficient evidence she "committed a knowing, material falsity." Relying on *People v. Deluca* (2014) 228 Cal.App.4th 1263 (*Deluca*), Buttner contends a "residence" may be any address an individual frequents "without regard for the number of days or nights actually spent there," and, there was insufficient evidence that her use of the Rockwood Apartment address was false under such a broad definition. (*Id.* at p. 1267.)

The assertion fails for two reasons. First, the definition discussed in *Deluca* is derived directly from Penal Code section 290.111, which applies to transients required to register as sex offenders. (*Deluca, supra*,

49

228 Cal.App.4th at p. 1267.)  Not surprisingly, the definition of "residence" for that purpose is quite broad, and Buttner provides no authority indicating the broad definition is applicable outside that context or, more specifically, in the context of applying for a driver's license.  Second, the form itself, which was entered into evidence at trial, requires a "residence address," defined as "*where you live*," and distinguished from "mailing address," "*where you receive mail*."  (Capitalization omitted.)  Again, although the jury was not properly instructed on the definitions of residence and domicile, if it had had been, the jurors reasonably *could* have determined that Buttner knew she did not live, or maintain a residence or domicile, at the Rockwood Apartment when she filled out the DL 44 form in November 2017.

B. *False Declaration of Candidacy, Count 2*

In Count 2, the People charged Buttner with filing a false declaration of candidacy in violation of Elections Code section 18203.

Elections Code section 18203 makes it a crime for any person to file or submit for filing a nomination paper or declaration of candidacy knowing that it or any part of it has been made falsely.  The statute "is designed to protect the integrity and reliability of publicly filed election documents and has at its core protections against fraud.  It is designed to assure the complete and accurate disclosure of information contained in nominating papers and declarations of candidacy." (*People v. Guevara* (2004) 121 cal.App.4th 17, 26.)

Election Code section 10602, subdivision (a) sets forth the requirements for the declaration of candidacy forms and states it "shall be in substantially the following form:

"'I, _____, do hereby declare myself as a candidate for election to the governing board of _____ District, of the County of _____; I am a registered voter; if elected I will qualify and serve to the best of my ability; and I request my name be placed on the official ballots of the district, for the election to be held on the _____ day of _____, 20_____.

"_____

"Residence address: _____' "

The Declaration of Candidacy that Buttner submitted appears below, and includes the additional language, "I am a registered voter *residing in the above named trustee area, if any*." (Italics added.)

**DECLARATION OF CANDIDACY**

**GOVERNING BOARD MEMBER**

(Elections Code Sections 13107, 10602)

OFFICIAL USE
COUNTY OF IMPERIAL
FILED: JUL 25 2017
BY: IMPERIAL COUNTY
REGISTRAR OF VOTERS

Debra Porter
REGISTRAR OF VOTERS

I, Annette Gonzales-Buttner, do hereby declare myself as a candidate for
(Candidate print or typewrite name as it is to appear on the ballot)

Election to the governing board, for Trustee Area 1, Imperial County Board of Ed.

District, in the County of Imperial, State of California. I am a registered voter residing in the above named

trustee area, if any; if elected I will qualify and serve to the best of my ability; and I request my name be placed

on the official ballot for the election to be held *November 7, 2017.* I desire the following designation to appear

on the ballot under my name: Governing Board Member, Imperial County Board of Education Area 1
(If any, please print: "Incumbent" if applicable, or not to exceed three qualified words)

I do **not** elect to file a statement of qualifications as permitted by Elections code 13307-13312.

Candidate: Sign here only if you do **not** choose to file a statement.

Signature Annette Gonzales-Buttner

Residence Address 1620 Rockwood Ave #6
Calexico, Ca. 92231

This additional language is consistent with Education Code section 1000, which requires each member of a county board of education to "be an elector of the trustee area that the member represents." (*Ibid.*)

51

As with the other forms, there is no dispute that Buttner listed the Rockwood Apartment address as her "Residence Address" and signed the form. Buttner acknowledges there was evidence she established residency in Santa Clara, but asserts, under a proper interpretation of the law of residency, the evidence was not incompatible with her *also* maintaining a residence and domicile in Calexico. On this point, we agree. As we have explained, had the jury been properly instructed, it reasonably *could* have determined Buttner had two residences, one in Santa Clara and one in Calexico. However, there was also substantial evidence to support the opposite conclusion, that Buttner had established a new residence and domicile in Santa Clara.

Intent to remain, for the purposes of establishing domicile, is not based on words alone, and can, instead, be inferred from one's actions. (*Fenton v. Board of Directors* (1984) 156 Cal.App.3d 1107, 1117.) Here, there was evidence Buttner had been living, at least part time, in Santa Clara for nearly three years, since the summer of 2014, when she signed the declaration. Three of her four children were in school there, and, although they were initially living with Stampolis in his apartment, by 2017, Buttner had signed several leases in Santa Clara as well. Ultimately, it was up to the jury, as the trier of fact, to weigh the evidence, and the credibility of the witnesses, to determine whether Buttner reasonably believed she remained domiciled at the Rockwood Apartment despite living in Santa Clara for several years.

C. *Grand Theft by False Pretenses, Count 3*

Finally, in Count 3, the People charged Buttner with grand theft by false pretense, in violation of Penal Code section 484.

Penal Code section 484 provides, in relevant part, "[e]very person who shall . . . knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property . . . is guilty of theft." "The crime of theft by false pretenses thus consists of three elements: ' "(1) the defendant made a false pretense or representation to the owner of property; (2) with the intent to defraud the owner of that property; and (3) the owner transferred the property to the defendant in reliance on the representation." ' " (*People v. Hartley* (2016) 248 Cal.App.4th 620, 627 (*Hartley*).) The false pretense may be a misrepresentation of an existing fact. (*Ibid.*) It " 'must have materially influenced the owner to part with his property, but [it] need not be the sole inducing cause.' " (*People v. Whight* (1995) 36 Cal.App.4th 1143, 1152 (*Whight*).)

Buttner asserts there was insufficient evidence she made a false statement by using the Rockwood Apartment address on the Declaration of Candidacy. That argument fails for the same reasons as we have already explained with respect to Count 2. In addition, we note that the charge in Count 3 was not limited to the Declaration of Candidacy form. Indeed, during closing arguments, the prosecutor stated the theft charge was based on "the actual false information that was on the documents [plural] that she filed with the Registrar of Voters." This would include, for example, documents related to Buttner's voter registration, which were also filed with the Registrar of Voters.

In addition, Buttner asserts there was insufficient evidence that the ICOE paid her stipend and benefits in reliance on the allegedly false representation. She argues that Finnell knew about the allegations regarding her residency but continued to sign her checks, that he did so

53

because she continued to perform the job, and that there was never a challenge to the election results or to her retaining her position on the board. Regardless, though, there was also evidence that the Registrar of Voters would not have placed Buttner's name on the ballot as a candidate in the first instance had she not put the Rockwood Apartment address on her voter registration and candidacy forms.

Finnell testified that the ICOE continued to pay Buttner's stipends and benefits after the November 2017 election in reliance on the Registrar of Voters verifying that she was qualified to run for re-election. And, in turn, Porter testified that the Registrar of Voters would likely allow someone to run for office if the person lied about their domicile on the requisite forms because they relied on those forms and the person's status as a registered voter, and would not know if the person was lying. This testimony alone was sufficient evidence from which the jury could conclude that Buttner's alleged misrepresentation about her residence address in Calexico materially influenced the ICOE to continue to pay her. (See *Whight, supra*, 36 Cal.App.4th at p. 1152; see also *Hartley, supra*, 248 Cal.App.4th at p. 627 [false representation may be proved by the defendant's words or conduct and may be corroborated by the circumstances surrounding the transaction]; *People v. Wooten* (1996) 44 Cal.App.4th 1834 [loan officer's reliance on statements included in vouchers for disbursements sufficient to support grand theft charges where officer testified he would not have approved payment absent misrepresentations].)

Further, evidence that Finnell was investigating Buttner's residency did not preclude the jury from finding that the Registrar of Voters and ICOE nevertheless relied on Buttner's representations in paying her stipend and benefits in the meantime. The extent to which the ICOE relied on Buttner's

54

alleged misrepresentations in paying her stipend and benefits was a fact question for the jury to decide, and there was at least some credible evidence from which they could conclude the ICOE did in fact rely on Buttner's representations. (See *Whight, supra*, 36 Cal.App.4th at p. 1154 [partial investigation by the victim of false pretenses presents a fact question as to reliance for the jury to decide].)

In sum, we conclude there was sufficient evidence to support the jury's verdict as to each of the asserted causes of action, had the jury been properly instructed. Accordingly, the People are not barred from retrying Buttner if they choose to do so. (See *Wetle, supra*, 43 Cal.App.5th at p. 388.)

III.    *We Need Not Address Buttner's Remaining Assertions*

Buttner raises additional contentions on appeal, including that she is entitled to resentencing pursuant to recent changes to Penal Code section 654, enacted by Assembly Bill No. 518 (Stats. 2021, ch. 441, § 1), which afford the trial courts greater discretion in sentencing acts punishable in different ways under different laws, and that the trial court erred in ordering her to pay substantial sums in restitution. The People concede the changes to Penal Code section 654 are retroactive, and that, absent reversal, remand for resentencing would be appropriate. Because we reverse the convictions based on the instructional errors, we need not address these additional arguments. If Buttner is convicted after retrial on remand, she shall be afforded a full rehearing on sentencing and restitution and amended Penal Code section 654 will necessarily apply.

## DISPOSITION

The judgment of conviction is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.


                                                            BUCHANAN, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.